80-04

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN RE THE MARRIAGE OF
LINDA KRUM,

Petitioner and Respondent,

vs.

GERALD JACOB KRUM,

Respondent and Appellant.

---

Appeal from:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

R. P. Ryan, Billings, Montana

For Respondent:

George T. Radovich, Billings, Montana

---

Submitted on briefs: April 25, 1980

Decided: JUL 25 1980

Filed: JUL 25 1980

_Thomas J. Kearney_ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Gerald Krum appeals from the property settlement provisions of a divorce decree entered in the Yellowstone County District Court.

Gerald and Linda Krum were married in 1964. They were separated briefly in 1976 and were permanently separated in December, 1977. Linda filed for divorce on August 30, 1978, the trial was held on August 16, 1979, and the District Court entered its findings of fact, conclusions of law, and decree of dissolution on October 25, 1979.

Until December, 1977, both husband and wife took an active part in the family farming operation located near Huntley, Montana. Following the separation, Linda lived in the family's trailer home with the parties' two children. She no longer took an active part in the farming operation, although she did not interfere with Gerald's use of the land and equipment which was held in their joint name. Following the separation, Jerry continued to operate the farm and received all the profit and loss from the operations. He paid Linda $500 per month in child support in addition to allowing her the use of the family home. Linda began working parttime as a legal secretary-receptionist and attending Eastern Montana College.

The principal assets of the marital estate were 120 acres of irrigated farm land, acquired from Gerald's parents in 1975 through a contract for deed, and farm machinery, acquired partly from Gerald's parents and partly during the marriage and after separation. The principal liabilities were the amount owing on the contract for deed and a fluctuating farm operating loan.

The District Court made the following valuation of the marital estate as of the trial date:

| | | |
|---|---|---|
| Farm Land | $165,000.00 | |
| Balance owing | - 73,000.00 | $ 92,000.00 |
| Farm Equipment: | | |
| From respondent's father | $ 13,560.00 | |
| During marriage | 44,880.00 | |
| Since separation | 12,800.00 | 71,240.00 |
| Mobile Home (in place) | | 12,000.00 |
| Savings Account | | 2,000.00 |
| Keogh Plan (discounted) | | 6,500.00 |
| 1978 Pontiac (actual equity) | | 1,500.00 |
| Horse | | 100.00 |
| Furniture | | 500.00 |
| | TOTAL | $185,840.00 |

The District Court also found that husband and wife had contributed equally to the accumulation of the marital estate prior to the separation and that although Linda did not function as a marital partner following the separation, her unfulfilled obligation was offset by Gerald's use of her interest in the land and machinery. As a result, the District Court entered a divorce decree which required Gerald to provide support of $250 per month per child and made the following equal property division:

TO PETITIONER LINDA ANN KRUM:

| | |
|---|---|
| Mobile Home and 5 acres of farmstead | $ 27,000.00 |
| Savings Account | 2,000.00 |
| 1978 Pontiac (net) | 1,500.00 |
| Horse | 100.00 |
| Furniture | 500.00 |
| Cash Payment | 61,820.00 |
| GRAND TOTAL | $ 92,920.00 |

TO RESPONDENT GERALD JACOB KRUM:

| | | |
|---|---|---|
| Farm Land (net) | | $ 77,000.00 |
| Farm Equipment and pickup truck | | 71,240.00 |
| Keogh Plan | | 6,500.00 |
| | TOTAL | $154,740.00 |
| LESS cash payment to petitioner | | - 61,820.00 |
| | FINAL TOTAL | $ 92,920.00 |

It will be noted that this division does not make provision for the farm operating loan. The amount of this loan fluctuates considerably. The lowest it has been in the last seven or eight years is approximately $7,000 and the highest was $49,500 on the date of trial. The note balance on the date of separation was $28,000 and the balance on April 1, 1979, was $22,000. The proceeds have been used for farm expenses and personal items. The testimony at trial does not reveal the exact disposition of the proceeds and no attempt was made to quantify the amounts. Gerald testified that the balance on the note is directly related to the income that will come out of the farm for 1979. He estimated that approximately $35,000 is attributable to 1979 farm expenses. Also a pickup truck and combine were purchased through the borrowings. Gerald also testified that portions of the note were used to pay child support, to buy personal items, and to repair his current leased residence. The last expense will be reimbursed in the future.

Gerald Krum moved to amend the findings, conclusions and decree to include the operating loan in the net marital estate and to value the estate as of the date of separation in December, 1977, instead of the date of trial. The District Court entered an order denying the husband's motion. In an attached memorandum the court stated:

> "The primary adjustment being urged by respondent in his motion to amend Findings and Conclusions, and the principal cognizable one, is to incorporate into marital estate calculations the amount of the farm operating loan which, at the time of trial, was $49,500.00. This loan account exists upon a continuing basis, is renewed annually, and fluctuates widely. It was intentionally omitted in the Court's calculations because of a lack of sufficient information to do otherwise. For example: The evidence showed that respondent purchased a combine, a pickup

truck, a camper shell, CB radio and stereo in 1978, after the parties separated, for a total cost of $12,800.00. The money for these purchases came from the operating loan and, as a consequence, no specific encumbrance became imposed upon the equipment itself and, although the evidence advises that some $22,000.00 in payments were made upon the loan in 1978, there is no itemization given to show the relationship of such payments to the indebtedness incurred in purchasing this equipment; so its net equity is impossible of determination under the evidence presented. Consequently, the Court was left with the alternative of either using the purchase price as the value to the marital estate as though it was paid in full, or considering it encumbered to its full value and, therefore, having no equity whatever. Obviously, it is not valueless, so the first alternative had to apply.

"Further, in connection with using the whole amount of the loan balance as a deduction from marital assets, as is urged by the respondent, it appears that the proceeds from the operating loan are used largely for noncapital expenses, being $35,000.00 in 1979 to date of trial. These expenses have no relationship to a determination of marital assets when the farm proceeds are excluded as has been the case here. Even if included, however, in the circumstances of these parties there would be a problem of detailed accounting to determine which expenditures are relevant to the marriage and the marital assets of these parties and which are not. Also, it would very likely require a reconciliation of the operating loan account over several years in the past, as well as into the future, by reason of the mechanics of its continuing operation.

"The respondent has had, and under the decree continues to have, the farm operation exclusively to himself, with both expenses and income his, as well as any profit or loss. That was the basis upon which the evidence tendered the issues to the Court for its decision and it was on that basis that the matter had to be decided."

With regard to the future proceeds, Gerald Krum testified that he could not estimate the value of his sugar beets, corn, grain and hay crops which were growing on the jointly owned land and 260 additional acres that he leased.

The District Court also found no authority to support Gerald Krum's contention that the marital estate should be valued as of the date of separation rather than the date of trial.

The following issues are raised on appeal:

(1) Whether the District Court committed reversible error by refusing to deduct the value of a farm operating loan from

- 4 -

the value of the marital estate; and

(2) Should the net marital estate be determined on the date of separation or on the date of dissolution?

The disposition of a marital estate is governed by section 40-4-202, MCA, and is largely within the discretion of the District Court. This Court will not disturb the decision of the trial court absent a clear abuse of discretion. Eschenburg v. Eschenburg (1976), 171 Mont. 247, 557 P.2d 1014. The test for abuse of discretion is whether the trial court acted arbitrarily without the employment of conscious judgment or exceeded the bounds of reason. In re Marriage of Berthiaume (1977), 173 Mont. 421, 567 P.2d 1388; Fredericksen v. Fredericksen (1980), ____ Mont.____, 605 P.2d 1135, 37 St.Rep. 191.

Of the $49,500 balance of the farm operating loan, Gerald Krum testified that he estimated that $35,000 represented 1979 noncapital farm expenses and $1,400 represented residence repairs. The $1,400 will be reimbursed by the owner of the residence at a later date and the $35,000 will be reimbursed by farm profit or absorbed in farm loss from the 1979 crops and the sale of cattle. Neither of these future proceeds were included in the marital estate; thus the District Court was entirely correct in offsetting $36,400 of the $49,500 note. The husband also testified that a portion of the loan represented child support payments and personal living expenses. Apparently a portion of the remaining balance of the loan represents the unpaid balance of the operating loan from prior years. Evidence also reveals that the only proceeds used to purchase capital assets following the separation were $7,500 to purchase a combine and approximately $6,000 to purchase a pickup truck. Both purchases occurred in 1978.

Thus, the District Court was faced with whether or not to include any, a part or all of the unquantified balance of $13,100, which represented child support, personal expenses, and

prior borrowings. This was a difficult question, largely accounting oriented. We find the District Court's reasoning in the previously quoted memorandum persuasive. Gerald Krum operated the family farm entirely on his own for the years 1978 and 1979 and was entitled to the profit and loss from the operation. The entire portion of the loan representing operating expense should be absorbed by him, and the only items which could rationally be deducted from the estate were the amounts attributable to the acquisition of farm equipment. Depending upon the accounting method used, this amount could be a proportionate amount of the $13,500 equipment purchased in 1978 or nothing if the first-in first-out accounting method is used. We find the omission of the $49,500 note to be reasonable under the circumstances of this case.

With regard to the valuation date issue, it is admitted in appellant's brief that the valuation will not alter the result in the present case since the appreciation in land after the separation was nearly equal to the depreciation of equipment. The only authority presented by appellant is section 40-2-206, MCA, which pertains to earnings and accumulations of a married person while living separate from his spouse. The only increase in asset values between the date of separation and the date of dissolution was the appreciation of land, which can hardly be characterized as an accumulation solely of Gerald Krum since the property is held jointly. The value of farm equipment in fact declined due to depreciation. Consistent with In re Marriage of Kramer (1978), ____Mont.____, 580 P.2d 439, 35 St.Rep. 700, and Hamilton v. Hamilton (1980), ____Mont____, 607 P.2d 102, 37 St.Rep. 247, we find the date of dissolution to be the date of valuation of the marital estate.

Affirmed.

_Frank I. Haswell_
-------------------------------------
Chief Justice

- 6 -

We concur:

_John C. Sheehy_

_John Conway Harrison_

_Jim B. Daly_

_Daniel J. Shea_

Justices