No. 92-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

CYNTHIA KEASTER, n/k/a DAVIS
      Petitioner,

and

ROBERT KEASTER,
      Respondent/Appellant,

STATE OF MONTANA, CHILD SUPPORT
ENFORCEMENT DIVISION,
      Relator,

JERRY J. FLEMING,
      Intervenor/Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Susan L. Weber, Great Falls, Montana

For Respondent:

James D. Elshoff, Great Falls, Montana (Fleming);
John Koch, Montana Department of Revenue, Child
Support Enforcement Division, Great Falls, Montana;
Peggy Probasco, Child Support Enforcement Division,
Butte, Montana

Submitted on Briefs: March 25, 1993

Decided: June 10, 1993

FILED

JUN 10 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a judgment entered by the Eighth Judicial District Court, Cascade County, denying appellant a stay of proceedings and a new trial. We reverse and remand.

The only question on appeal is whether the District Court erred in disallowing appellant a new trial and a stay of proceedings based upon prior Montana case law prohibiting relitigation of paternity.

This appeal involves a dissolution proceeding between Robert Keaster (Keaster) and Cynthia Keaster (a.k.a. Cynthia Davis, hereinafter, Davis). Dissolution was granted on October 3, 1990 following Keaster's default. About a month after the dissolution was final, Keaster was informed that he was not the father of the youngest of the two Keaster children. This child shall be referred to as JMK. His non-paternity of JMK was proved by a subsequent blood test.

Following this blood test which had been agreed to by Davis and Keaster, the two executed a written stipulation stating that Keaster was not the natural father of JMK. On April 17, 1991, Keaster petitioned the court for a modification in the child support payments he was currently paying for JMK because of his non-paternity. The court held a hearing on this issue and heard testimony from both Davis and Keaster on April 30, 1991. The court found that the evidence conclusively proved Keaster was not the natural father of JMK. The court lowered Keaster's child support

2

payments in an Order for Modification of Child Support and Custody issued on May 16, 1991.

Within the next several months, Cynthia applied for child support monies from the State of Montana. At this time she named the natural father of JMK. Child Support Enforcement Division (CSED) began pursuit of Jerry Fleming (Fleming), the alleged natural father, in an attempt to procure payment of child support for JMK. Fleming refused and on September 23, 1991, filed a motion to intervene in the dissolution proceedings, and a motion for permanent injunction.

Fleming filed notice of his intervention with Cynthia Keaster and CSED. He did not notice Robert Keaster, a party to the dissolution. Based upon the briefs submitted by Fleming and the CSED, the District Court issued its Conclusions of Law on January 10, 1992, reinstating Keaster's payment of child support for JMK. A copy of this order was never sent to Keaster, nor was he served with any notice of entry of judgment in this proceeding.

Keaster realized what had transpired when he was again approached by CSED for child support payments for JMK. This prompted Keaster to file a motion in April of 1992, seeking a stay of proceedings pending a new trial pursuant to Rule 59, M.R.Civ.P. Keaster sought a new trial based upon the intervenor's failure to serve him with notice of the intervention and his subsequent loss of opportunity to defend against the reinstitution of child support for JMK. Because Keaster was never served with notice of entry of judgment, he argued that the time for filing motion for new trial

3

had not run. The court heard arguments on these motions on May 20, 1992, and on May 26 issued an order denying Keaster's motions. Keaster now appeals this denial.

Did the District Court err in disallowing appellant a new trial and a stay of proceedings based upon prior Montana case law prohibiting relitigation of paternity?

The denying of a new trial is within the discretion of the District Court and this Court will not disturb that ruling unless the court abused its discretion. Brockie v. Omo Construction (1992), 844 P.2d 61, 49 St.Rep. 1092. Here, the District Court's denial of a new trial was rooted in previous case law of this State. In the District Court's Conclusions of Law, the court relied on two prior Montana cases which prohibit relitigation of paternity once it is established. We evaluate a district court's conclusions of law as to whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 603. We, therefore, consider whether the District Court relied on the correct precedent.

The District Court's reinstatement of Keaster's child support for JMK was issued on January 10, 1992. In April 1992, Keaster filed a motion seeking a stay pending a new trial. Under Rule 59, M.R.Civ.P., a motion for new trial must be filed within ten days of notice of entry of judgment. The record shows that no notice of entry of judgment was served upon Keaster, and, therefore, he had no express date from which to determine the start of the ten day period. The District Court's January 10, 1992 order relies on two

4

prior cases from this Court in denying Keaster a new trial. The court is in error in relying on these cases.

In Butler v. Brownlee (1969), 152 Mont. 453, 451 P.2d 836, this Court dealt with a situation where a father had paid child support for several years following his dissolution and then protested. "More than four years later (after the dissolution) the husband, following attempts to collect child support from him, filed a "Motion for Modification of Divorce Decree" alleging that he 'now has satisfactory proof that the two children as noted in the decree are not his issue.'" Butler, 152 at 455, 451 P.2d at 837. This husband had placed the paternity of his children in issue <u>from the beginning of the dissolution proceedings</u>. The court considered the husband's arguments during the dissolution and determined paternity. The husband did not appeal.

The District Court in Butler negated the husband's paternity and the mother applied for a writ of review from the Court. The Butler Court chose to review the proceedings and stated that:

> In our view <u>under the circumstances disclosed here</u>, the court's jurisdiction on the issue of parentage of the minor children became exhausted upon entry of the original divorce decree, and <u>until that decree is reversed on appeal, or regularly amended or vacated for reasons set forth in and pursuant to Rules 59 and 60, M.R.Civ.P.,</u> the court cannot again hear or determine the issue of paternity. (Emphasis added.)

Butler, 152 Mont. at 458, 451 P.2d at 838-839.

The Butler Court made its holding specific to the facts of the case. Those facts clearly indicate that the father suspected that the children were not his during the dissolution and said so. The court considered his arguments, but did not agree.

5

The Court stated, "But must we close our eyes to the need for immediate relief under the circumstances disclosed here?" Butler, 152 Mont. at 459, 451 P.2d at 839. The Court could not close its eyes and, therefore, issued an original writ stating that parentage could not be relitigated--under the facts of that case. The Butler ruling is still law, where circumstances reflect the same fact pattern. It does not, however, control the facts we have before us.

Here Davis agrees that Keaster is not the father of JMK. Keaster did not file his action in an attempt to avoid long standing child support debts, nor did he even think to bring the issue of paternity up during the dissolution. Like the Butler Court, we do not close our eyes to the circumstances presented by the record in this case.

Butler was the case upon which a later Court based its decision. Marriage of Holland (1986), 224 Mont. 414, 730 P.2d 410. Holland broadened the Butler ruling considerably, although the underlying facts were similar. In Holland, we have a situation similar to that in Butler in that the Court was faced with another four year old dissolution in which the father was significantly behind in his child support and sought to have the paternity of the children questioned. The father in Holland, did not, however, bring the issue of paternity up until four years after the dissolution. Thus, the case is different from Butler in that the district court in Butler specifically considered the father's arguments concerning paternity at the time of the dissolution.

6

In both Butler and Holland the person named in the decree as the father was attempting to reduce or eliminate child support payments after a number of years. The natural father was not identified in either of these cases and the mothers failed to agree that the parties were not the fathers of the children. In contrast here, as soon as he received information that he was not the father, Keaster petitioned, and upon a hearing, both Keaster and the mother, Davis, agreed he was not the father. The court then specifically found that he was not the father. We conclude that neither Butler nor Holland is binding precedent under the facts of this case.

The key procedural failure in this case was the failure to give Keaster any notice of Fleming's intervention and the failure to serve notice of entry of judgment upon Keaster. Fleming claims he was under no obligation to notice Keaster because Keaster had defaulted in the original dissolution proceedings. Fleming is not correct. Rule 24(c), M.R.Civ.P., provides the following with regard to intervention.

> Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided by Rule 5.

In addition, Rule 5(a), M.R.Civ.P., provides the following in regard to service of order:

> Except as otherwise provided in these rules, every order required by its terms to be served . . . shall be served upon each of the parties.

Under the above rules, notice of intervention was required to be served upon Keaster, one of the parties to the action. Fleming

7

argues no service was required because of the initial default of Keaster. That argument disregards the dissolution modification proceedings which took place in this cause and in which Keaster did appear and secured the order of modification of child support. We conclude that Keaster was a party who had appeared in the proceeding and that Fleming was required to serve notice of intervention upon him. In a similar manner, because he was a party, we conclude that Fleming was required to serve notice of entry of judgment upon Keaster.

We further conclude that because of the failure to serve notice of intervention and of the failure to give notice of entry of judgment, there was no procedural reason for the District Court to deny Keaster's motion for a new trial.

We reverse the order of the District Court of January 10, 1992, which reinstated Keaster's payment of child support for JMK. Having concluded that the District Court abused its discretion in refusing a new trial, we remand the proceedings to the District Court for a new trial and consideration of such matters at it deems appropriate in a manner consistent with this opinion.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____
John Conway Harrison

8

William E. Huntley

Karla M. Gray

J. C. McDonough

Jim Nelson

Justices

June 10, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

SUSAN L. WEBER
Attorney at Law
P.O. Box 1258
Great Falls, MT  59403

JAMES D. ELSHOFF
Attorney at Law
P.O. Box 2323
Great Falls, MT  59403

JOHN KOCH
Montana Department of Revenue
Child Support Enforcement Division
219 5th Street South, Suite D
Great Falls, MT  59405

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy