No. 93-614

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE MARRIAGE OF

DEANNE M. NEAL,

    Petitioner and Appellant,

and

DALE E. NEAL,

    Respondent and Respondent.

FILED

NOV 14 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Marcia Birkenbuel, Great Falls, Montana

    For Respondent:

    Joan E. Cook, Great Falls, Montana

Submitted on Briefs:  August 11, 1994

Decided:  November 14, 1994

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the findings of fact, conclusions of law and final decree of dissolution entered by the Eighth Judicial District Court, Cascade County, Montana. We reverse in part and affirm in part.

We consider the following issues on appeal:

I. Did the District Court err in determining the net value of the marital estate?

II. Did the District Court abuse its discretion by refusing to consider newly discovered evidence regarding the cash value of the Kentucky Central Life Insurance policy?

III. Did the District Court abuse its discretion by amending its order to finally refuse reimbursement to Deanne for the children's health insurance premiums?

Deanne Neal (Deanne) and Dale Neal (Dale) were married in 1973. During the marriage, the couple lived and worked on the family farm in Fairfield, Montana. Dale still works on the farm and Deanne is employed part-time. Neither party owned substantial property prior to the marriage. During the marriage they accumulated a home, land, livestock and various vehicles and equipment.

Five children were born of the marriage, four of whom were minors at the time of the trial. Following the dissolution of the marriage, the couple agreed to share legal custody of the children, with primary residence to be with Dale on the farm. Dale retained the sole control over the family farm and Deanne rented a home in Fairfield.

Deanne filed an action for dissolution on July 29, 1992, in

2

Cascade County. Trial was held on July 15, 1993, and on September 16, 1993, the court issued its findings of fact, conclusions of law and final decree dissolving the marriage, dividing the property and providing for custody of the children. The child custody arrangements ordered by the court agreed with those of the parents incorporated into their written agreement. Subsequently, Deanne filed a motion to alter or amend the judgment or for a new trial. Dale filed his opposition and the court denied Deanne's motion.

The major dispute at trial involved the calculation of the net value of the marital estate as it concerned the farm and ranch operating note. At the time of trial the balance on the note was $84,740.00 but the crops securing the note had not been sold nor had the calves sold.

At trial, Deanne's expert testified that there were several accounting alternatives that could be used to set the net value of the marital estate when it involves a farming operation. One of the alternatives included valuing all the assets bought or produced with the operating loan against the full balance owing on the loan; another method would be to exclude both the note and the assets produced therewith. Another method would be to determine an average loan balance and subtract from the average loan balance the average annual value of the crops and livestock.

Evidence at trial showed that Deanne had borrowed a significant sum of money from her parents in order to pay her monthly living expenses in Fairfield. Deanne moved the court for temporary maintenance and at the hearing the court determined that Deanne needed an extra $500 a month to live. The court initially

3

determined that the monthly sum of $500 should be included in the marital debt to be divided by both Deanne and Dale. In the final decree, the court found that no evidence existed to show that the money borrowed from Deanne's parents had to be repaid.

Dale received the farm as part of the property settlement and Deanne received the Life Insurance policy which was valued at $10,000, a cash payment of $13,570 and half of the cooperative patronage credits worth $6,250. Deanne was unable to cash the insurance because the company was in rehabilitation proceedings.

By order of May 24, 1993, the court ordered Dale to repay Deanne for the extra $156 she paid to her employer each month for the children's health insurance premiums. Dale was to make these payments to Deanne on the first of each month until the final decree in the case was issued. Dale obtained health insurance for the children during the next month and did not reimburse Deanne for any premiums she paid after he obtained insurance. Deanne did not drop the children from her policy at work because of the court order. Attempts to get Dale to reimburse her for these payments were to no avail.

Deanne appeals the court's final September 1993 findings, conclusions and decree.

## Standards of Review

Much of the information we are asked to review here involves the court's findings of fact as to the valuation of the net marital estate. Such findings with regards to the division of marital property are reviewed to see if they are clearly erroneous. Marriage of Danelson (1992), 253 Mont. 310, 833 P.2d 215.

4

Discretionary rulings by the District Court are reviewed to ensure that the District Court did not abuse its discretion. Marriage of Scoffield (1993), 258 Mont. 337, 852 P.2d 664. We review a district court's legal conclusions to see if the conclusions are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 613.

I.

Did the District Court err in determining the net value of the marital estate?

A. Value of Crops

In setting a value for the marital estate, the District Court included in the list of marital liabilities, the balance owed on the operating note for the farm. However, the court did not take into account the value of the crop grown with the help of the money borrowed. Appellant argues that this is error. Respondent contends that the court was correct in adding the $84,000 owed on the operating loan to the list of marital liabilities.

Previous cases provide guidance for determining the effect of an operating loan on a property settlement. In the Marriage of Krum (1980), 188 Mont. 498, 614 P.2d 525, we considered the district court's action of offsetting the balance of the operating loan with the value of the future proceeds of the farm's crops. Krum, 188 Mont. at 503. We determined that the court was correct in subtracting the value of crops from the amount owed on the loan and attributing the remainder of the balance owed to the marital estate.

In the Halverson case, we approved the same accounting method

5

of considering the crops as "fruit" of the operating loan:

> The husband's 1984 farming operation is easily accounted for. The husband had complete control and, fairly, should be held responsible for the 1984 results. Equitably, it is fair to charge him with the December 1984, Federal Land Bank payment for the use he made of the family farm in 1984. He, then, would also be entitled to the fruits of his 1984 crop efforts which he, in fact, had. (Emphasis added.)

Marriage of Halverson, 230 Mont. 226, 230, 749 P.2d 518, 520. Because of the timing of the dissolution in Halverson, the husband was attributed both the bank debt and the credit for the crops. In the present case, the dissolution occurred during the middle of the year and the bank debt was attributable to both parties as part of the marital estate. However, the court totally neglected to take into consideration the "fruits" of the operating loan.

We find persuasive the testimony presented by Deanne's expert witness, Nicholas Bourdeau, a certified public accountant. He testified that when valuing a farm operation, the liability of a farm operating debt must be set against any value gained as a result of using the operating monies. He stated that: "[Y]ou either count all the assets this money [the operating loan] bought, or you don't count any of the assets and don't count any of the note."

Bourdeau explained to the court that when he valued the marital estate, he only had one side of the equation in the figures he had been given or could discover. That side of the equation was the amount of the operating loan which the Neals obtained each year and repaid to the lending institution when the crops were sold. The current operating loan amounted to $84,000. What he did

6

not have were values for the current year-end crop yield because the crop was still in the ground. The money gained from the crop would go to repay the operating loan.

On cross examination, Bourdeau was asked what the $36,947 figure in his valuation for crops meant. He explained that this figure had nothing to do with the crops in the ground or the enhanced value of the cattle--both attributable to the contentious $84,000 operating loan. The crop value listed on his report was the amount of crops on the property from a prior year's harvest.

Bourdeau went on to state that it is very speculative and expensive when attempting to put a price on the value of crops in the ground and unharvested. Therefore, when he made his valuation of the marital property he had not speculated as to the value of the crops for this current year. Because he had no estimate as to the value of the crops, he preferred not to add the current operating loan figure of $84,000 on the liabilities side of the marital property valuation. He therefore excluded the $84,000 from the marital debts.

If courts are going to consider the operating loan debt of a farming operation, it is only a fair consideration to offset that debt with the value of the crops gained by way of that operating loan. This may sometimes mean an expensive projection of future value onto a farm's crops. The alternative, and the one called for here, was to disallow an operating loan repaid from the current crop yield. It should have been an "either-or" situation. Either both operating loan _and_ crops should have been considered or neither should have.

7

We hold the court erred in considering the operating loan shown in the court's findings as an $84,000 liability to the marital estate. We reverse the District Court's valuation of the marital estate and remand for further consideration of the operating loan/crop-yield equation.

### B. Money from Deanne's Parents

The trial court entered a temporary order in November, 1992, declaring that the $500 per month which Deanne needed to "borrow from her parents for her monthly living expenses shall be considered as a marital debt to be divided between the parties at the time of the final division of the marital estate." However, when the trial court entered its final order, the court found that the money borrowed from her parents was not expected to be repaid and the trial court did not include the debt in its calculation of the marital estate.

Deanne argues that she is responsible to repay her parents the money that she continues to receive from them, in order that she can pay her monthly living expenses. In essence, Deanne argues that there is an implied contract with her parents that she repay the money borrowed. Dale contends that no evidence was presented during these proceedings that shows that Deanne had an obligation to repay her parents the money she borrowed from them.

Contrary to Dale's argument, the record contains evidence in the form of Deanne's affidavit and testimony, both stating that she has only borrowed the money in order to meet her living expenses now. The record is devoid of any evidence offered by Dale that the money borrowed from Deanne's parents was a gift. Thus, the record

8

does not substantiate the court's final holding on the debt to Deanne's parents. We conclude, therefore, that the court correctly determined in its temporary order of 1992 that the $500 per month was a marital debt.

We hold that the District Court erred in excluding Deanne's $500 a month payment from her parents as part of the marital liabilities. We reverse the court's final decision on this debt and instruct the court to enter its original November 1992 ruling.

II.

Did the District Court abuse its discretion by refusing to consider newly discovered evidence regarding the cash value of the Kentucky Central Life Insurance policy?

The court awarded Deanne the $10,000 Life Insurance policy held by her and Dale. However, Deanne has been unable to cash this policy because the company is in rehabilitation. Deanne argues that the notice was sent to the farm concerning the status of this company, but the information was not passed to her. Deanne argues that this is newly discovered evidence and that she is due a new trial because of it. Dale argues that the notification was sent to Deanne and not him and that Deanne had the responsibility to research the company at least five months before trial.

Granting a new trial is within the sound discretion of the District Court. Marriage of Keaster (1993), 259 Mont. 48, 853 P.2d 1191.

Section 25-11-102, MCA, states that the grounds for new trial are met if the party making the application for a new trial based on newly discovered evidence presents evidence that could not have

9

been discovered prior to trial, using reasonable diligence. Newly discovered evidence is evidence that came to the moving party after trial, that was not undiscovered earlier through lack of diligence, that the materiality of the evidence is so great it would probably produce different results on retrial and that new evidence is not merely cumulative, nor tending only to impeach or discredit witnesses in the case. Cowles v. Sheeline (1993), 259 Mont. 1, 855 P.2d 93.

Contained within the evidence presented at trial is a document clearly indicating that the insurance company had Deanne's name on the policy as beneficiary, but the document has the ranch address on it. The record is ambiguous as to whether she knew of the rehabilitation action before or after trial. Her affidavit claims that she only learned of this after trial. In reviewing the facts presented here, while we are concerned that the possibility exists that Deanne was not informed of rehabilitation, Deanne's knowledge that rehabilitation was occurring would not have changed the outcome of the court's distribution. Deanne admits that the policy is not worthless.

We conclude that the District Court did not abuse its discretion in failing to order a new trial based upon newly discovered evidence.

### III.

Did the District Court abuse its discretion by amending the order requiring reimbursement for the children's health insurance premiums?

Deanne claims that she was ordered by the court in its May 24,

10

1993 order to maintain health insurance for the children and to have Dale reimburse her for this payment. According to Deanne, she could not stop providing this service for the children without a court order. Dale's attorney sent Deanne notification in June informing her that he had provided for the children's health insurance. However, Deanne would not stop paying the monthly premiums for the children under her own policy until ordered to do so by the court.

A review of the record shows that both parties signed a legal stipulation stating word-for-word what later became the court's May 24, 1993 order concerning the children's health care. The court in essence merely gave the parties' stipulation the force of law. A stipulation by the parties or judgment by consent is construed as a written contract and operates to end all controversy between the parties. First Bank (N.A.) Western Montana Missoula v. District Court for the Fourth Judicial District (1987), 226 Mont. 515, 737 P.2d 1132.

Despite this stipulation, Dale went ahead and obtained insurance for the children on his own, notified Deanne in June, and subsequently refused to reimburse her for the payments made by her following his notification. However, he did not notify the court of his unilateral purchase. Nor did Deanne petition the court for a change in its May order requiring her to provide insurance. As a result, Deanne carried the children on her insurance policy until the final decree issued in September of 1993, relieved her of that responsibility. That decree made Dale solely responsible for the children's health insurance.

Following the final decree, Deanne attempted to collect reimbursement from Dale for the insurance premiums that she had paid for the children between his notification in June and the court's final decree in September. Dale refused to reimburse her. In a November 4, 1993 order, (a response to Deanne's Motion for New Trial and Dale's Motion to Quash) the court further denied reimbursement to Deanne for the insurance paid for during the months between June and September. The court stated that Deanne should have suspended her policy on the children when Dale obtained health insurance for them.

The record does not contain either insurance policy in force between May and September of 1993, so it is impossible to conclude that the duplicative nature of these policies also made them redundant. We have no idea what the parameters of each policy were. We do know from the record that Deanne's policy contained a provision that the company pay for counseling for Deanne and the children. We do not know whether Dale's policy had a similar provision. Therefore, just because the two policies existed simultaneously for six months does not mean that one of them was unused or unneeded.

After a careful review of both law and facts, we conclude that the court, pursuant to § 40-4-208, MCA, has no jurisdiction to retroactively modify its own order providing support (health insurance) for the children. The court cannot require Deanne to act in opposition to its own order of May 24, 1993, despite Dale's unilateral action of providing insurance himself before the court made its final decree.

12

We hold that the court abused its discretion by amending its order to finally refuse reimbursement to Deanne for the children's health insurance premiums.

Reversed and remanded for further consideration of the operating loan\crop-yield equation and for issuance of a court order requiring Dale Neal to reimburse Deanne Neal for the money she paid for health insurance premiums for the children between May of 1993 and September of 1993. We also reverse the court's final decision concerning Deanne's debt to her parents and instruct the court on remand to enter its original November 1992 ruling.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

November 14, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Marcia Birkenbuel
Attorney at Law
613 Strain Building
Great Falls, MT 59401

Joan E. Cook
Attorney at Law
600 Central Plaza, Suite 300
Great Falls, MT 59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy