THOMPSON, Respondent, v. STEINKAMP, Appellant.

No. 8740

Submitted November 12, 1947. Decided December 18, 1947.

187 Pac. (2d) 1018

Mr. Ernest Abel, of Great Falls, for appellant.
Messrs. Graybill & Bradford, of Great Falls, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the Court.

This is an action seeking determination that defendant is holding certain described real estate in trust for the sole benefit of Fred J. Thompson.

The action was instituted by Emery O. Smith as guardian of the person and estate of Fred J. Thompson. After the commencement of the action, Thompson died and his wife, Alice S. Thompson, as administratrix, was substituted as party plaintiff.

The complaint alleges in substance that Thompson gave to defendant the sum of $2,000 to hold in trust for him; that at his request and with the funds so advanced by him to her, defendant purchased for him the property described in the complaint but took title in her own name; that Thompson later requested defendant to execute and deliver a deed to him covering the property but this she refused to do.

The answer of defendant admits that she purchased the property in question at the request of Fred J. Thompson and that he furnished the purchase price for the property and denies the other allegations of the complaint.

As an affirmative defense the answer alleges that the money used to purchase the property involved represented a consummated gift from Fred J. Thompson to defendant. As an additional defense the answer alleges in substance that Fred J. Thompson stated to her that he desired her to buy the property in question for a home to be owned by her and that in reliance upon the statement and with Thompson's knowledge she moved onto the property, established a home, made repairs and improvements, paid taxes thereon and expended money by way of enhancing the furnishings and buildings; that defendant permitted Thompson and his guests to live and board at the house on the premises and that plaintiff is therefore estopped from asserting ownership of the property.

The reply admits that defendant moved onto the property and puts in issue the other affirmative allegations of the answer.

The court found all the issues in favor of plaintiff and against the defendant and entered decree accordingly. Defendant has appealed from the decree.

The evidence offered by plaintiff was substantially as follows: Alice Thompson testified that she and her husband Fred J. Thompson owned residence property in Great Falls jointly in March, 1945, and that they made an agreement whereby she was to buy his interest so that he could obtain money with which to buy the property in question here, which was a cabin known as the Stephens property situated at Monarch. The agreement between Thompson and his wife was consummated through Jack Casey, from whom the witness borrowed the money. The amount paid was $2,100 and when Casey gave the money to Thompson, he said, "On account of your former wife, Rose Davis Thompson, I think the best thing for you to do is to take this money and get away."

It appears in the record that Fred J. Thompson had previously been married to Rose Thompson and divorced, she having a decree outstanding and in effect against him for alimony payable in installments. On the cross-examination of Mrs. Alice Thompson it was developed that Thompson bought two drafts, each for $1,000, from the money obtained from the witness and mailed them to defendant with which to buy the property in question. The drafts were introduced in evidence and show that they were both made payable to defendant. George R. Straiton, assistant cashier of the First National Bank of Great Falls, testified that as administrator of the estate of Arthur H. Stephens he negotiated the sale of the property in question here with Mr. Thompson. He said Thompson stated that he desired a place to live after his retirement. It was sold for $1,550; Thompson instructed that the deed be made in the name of defendant, which was done.

The reason he said for making the deed to defendant was, "he didn't want to have his second wife, to whom he was paying alimony, to come back and take a crack at the property." He produced several letters, some of which were written by Thompson to him, and others by the witness to Thompson,

all of which contained statements relating to and dealing with the purchase by Thompson of the Stephens property.

Mrs. Marjorie Tripp who handles the books for the Montana Power Company at Monarch said the light for the Stephens residence was connected under the name of Mr. Thompson. She also testified to a conversation had with defendant in which she said, "he [referring to Mr. Thompson] insisted on putting the property in my name * * * to protect it from his wife."

Mrs. Thompson was recalled as a witness and over defendant's objection was permitted to testify that on September 30th she talked with her husband about his property and he told her that he had placed the property in question in the name of Edith Steinkamp and that she told him she would "release it back" and that this was going to be done; that he also said this was done to keep from paying Rose (his former wife).

She also testified to a conversation between Thompson and defendant in her presence in which Thompson said to defendant, "You know our agreement about this property when I put it in your name; now things have changed and I want you to relinquish that deed to the Stephens property to me, and Mrs. Thompson and I are coming up there to live." Defendant then said, "that is mine," and Thompson replied, "that is what you think."

Defendant's proof need not be alluded to further than to say that it tended to show that the $2,000 represented by the two drafts was a gift made by Thompson to defendant out of consideration for the care which defendant gave to plaintiff's mother during her last illness.

The first contention made by defendant is that the court erred in permitting Mrs. Thompson to relate conversations and communications made to her by her husband. Reliance is had upon subdivision 1 of section 10536, Revised Codes of Montana 1935, reading:

"A husband cannot be examined for or against his wife

without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other.''

The court was right in overruling defendant's objection to the testimony of Mrs. Thompson under the circumstances. Mr. Thompson did not regard the communications in question as confidential in any sense because, as above noted, the court was warranted in finding that he made the communications to others besides his wife.

The rule under such circumstances is stated in the Note in 63 A. L. R. 114 as follows: "Having regard to the common-law rule as to confidential communications between husband and wife and its statutory enactments, the reason of the rule, and the fact that the rule was directed against the testimony of the husband or wife as to a communication which was of a confidential character, the rule regarding the testimony of husband or wife would seem to depend upon the question as to whether the party making the communication made it under such circumstances that he or she must have regarded it as a confidential communication; and one circumstance to be considered would be the presence or nonpresence of third persons at the time the communication was made.''

While all communications between husband and wife are presumed to be confidential, the contrary intention may be made to appear by the circumstances in a given case. And *"the presence of a third person* within hearing will negative a marital confidence; so, too, *the intended transmission* of the communication to a third person.'' Wigmore on Evidence, 3rd Ed., Vol. VIII, sec. 2336. And compare Kansas City Life Ins. Co. v. Jones; D. C., 21 F. Supp. 159.

The next point urged by defendant is that the court erred in permitting Mr. Straiton and Mrs. Thompson to testify to certain declarations of Mr. Thompson concerning the purchase of the property in question and the reason for the taking of title in the name of defendant upon the ground that they were self serving declarations.

Here the issue between the parties depended upon the intention with which Mr. Thompson furnished the money to defendant. Whether it was a gift to her as she contends or whether, as plaintiff contends, it was his purpose to have her buy the property in question for him, depended upon Mr. Thompson's intent. ''When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving.'' Whitlow v. Durst, 20 Cal. (2d) 523, 127 Pac. (2d) 530, 531. To the same effect are Dinneen v. Younger, 57 Cal. App. (2d) 200, 134 Pac. (2d) 323; Katz v. Enos, 68 Cal. App. (2d) 266, 156 Pac. (2d) 461; Sprague v. Walton, 145 Cal. 228, 78 Pac. 645.

Defendant assigns error in permitting a letter to be introduced in evidence written by the welfare office of Redwood County, Minnesota, to the effect that Mr. Thompson's mother had been in a rest home for more than two years and that defendant in caring for her had been paid by the county. The objection to this letter should have been sustained but we fail to see where defendant was prejudiced by admitting the letter in evidence. She admitted that she had been paid for her services while working at the home, including the work done in caring for Mr. Thompson's mother.

The next point urged by defendant is that the court erred in finding for plaintiff because that conclusion permits plaintiff to have restored that which was conveyed away for the purpose of defrauding creditors, contrary to the general

rule that a court of equity will not aid one who has caused the title to his property to be transferred to another for the purpose of hindering, delaying or defrauding his creditors.

The general rule is as contended for by defendant but it is not a universal rule. Thus in Scott on Trusts, Vol. 3, section 444, it is said: ''Although a resulting trust ordinarily arises where A purchases property and takes title in the name of B, A may be precluded from enforcing the resulting trust because of the illegality of his purpose. If A cannot recover the property, B keeps it and is thereby enriched. The question in each case is whether the policy against the unjust enrichment of the grantee is outweighed by the policy against giving relief to the payor who has entered into an illegal transaction. * * *

''In some cases it has been held that although the purpose of the purchaser in taking title in the name of another was illegal, yet the grantee should not be permitted to withhold the property from the purchaser. In these cases it is recognized that public policy does not require that the grantee should be permitted to be unjustly enriched at the expense of the purchaser, even though the purchaser's purpose was illegal, especially where the purchaser's conduct was not strongly reprehensible. Thus where a trust company was by statute precluded from holding land except for certain purposes and it purchased land in the name of its president, it was held that the company could enforce a resulting trust of the land. In another case it was held that where A purchased land in the name of B he could enforce a resulting trust against B although his purpose in making the purchase in this manner was to avoid the payment of taxes. Where a person deposits money in a savings bank in the name of another person, and it appears that his purpose in so doing was not to make a gift to the other person but to evade a statute or by-law of the bank fixing the maximum amount permitted to any one depositor,

the conduct of the depositor is not so illegal as to prevent him from claiming the deposit."

The rule is likewise stated in the Restatement of the Law of Trusts, section 422, as follows: "Where the owner of property transfers it inter vivos upon an intended trust which fails for illegality, a resulting trust does not arise if the policy against permitting unjust enrichment of the transferee is out-weighed by the policy against giving relief to a person who has entered into an illegal transaction."

As stated in the Comments in the Restatement, "The rule stated in this section is based upon the weighing of the interests of the parties and the public interest. As between the parties it is just that a resulting trust should be imposed in order to prevent the transferee from being unjustly enriched at the expense of the transferor. The interest of the public, however, may require that the transferee be permitted to enrich himself unjustly at the expense of the transferor. * * * It is impossible to state a definite rule which will determine in all cases whether a resulting trust will be imposed or not, since the court will consider all the circumstances involved in the particular case."

Factors to be considered in such a case are stated in the Restatement to be these: "(1) whether the settlor's conduct involves serious moral turpitude; (2) the extent of the policy of the law making the transaction illegal; (3) whether the enforcement of a resulting trust would tend to prevent the accomplishment of the illegal purpose; (4) whether the transferee was more at fault than the transferor; (5) whether the transferor was ignorant of the law or of the facts making the trust illegal."

Here if the trust be not established Mrs. Thompson will be deprived of her dower interest in the property as well as her right of inheritance. She was innocent of any wrongdoing on her part.

On the other hand there is evidence in the record that de-

484

fendant made the following statements to the witness Mrs. Tripp: "She told me that they had had a very bad night with Mr. Thompson the night before, and she said, 'I have got myself into a terrible mess;' she believed that Mr. Thompson was insane, and I made the remark, 'having so many women demanding so much of him, no wonder he was insane;' and she said, 'he insisted on putting this property in my name,' and I said, 'Why did he insist on putting it in your name?' and she said, 'To protect it from his wife.' "

Defendant denies having made any such statement. This conflict presented an issue for the trial judge to determine and if he found that defendant made such a statement he was warranted in concluding that defendant had sufficient knowledge of the purpose of Mr. Thompson to constitute her a party to the illegal purpose.

The record shows too that there were no claims presented against the estate of Mr. Thompson deceased, and that in fact no creditor was defrauded. On the whole record we cannot say that the court abused its discretion in holding that there was a resulting trust in this case. Under facts very similar this court reached the same conclusion in Hoppin v. Lang, 81 Mont. 330, 263 Pac. 421, and compare Kausky v. Kosten, 27 Wash. (2d) 960, 179 Pac. (2d) 950.

Finally it is contended by defendant that plaintiff is precluded from recovery by estoppel. The court was warranted in finding against defendant on this issue It is conceded that defendant was given the sum of $2,000 with which to purchase the property. She only paid $1,550 for the property. Defendant also sold Mr. Thompson's automobile for $268, which sum she still retains. What taxes she paid were paid after the commencement of this action and were trivial in amount. Whatever she did in the way of furnishing meals, improving the property, paying taxes, and otherwise was more than compensated for by the $719 of Thompson's money which she still withholds.

The court was warranted in finding for plaintiff and the decree is affirmed.

Mr. Chief Justice Adair, and Associate Justices Choate, Gibson, and Metcalf concur.