No.  92-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

MILTON J. HILLIARD, a/k/a MEL J.
HILLIARD, a/k/a J. HILLIARD,

      Plaintiff and Respondent,

  -vs-

LaDONNA M. HILLIARD, individually and
as Personal Representative of the
ESTATE OF HARLAN F. HILLIARD, Deceased,

      Defendant and Appellant.

APPEAL FROM:  District Court of the Nineteenth Judicial District,
              In and for the County of Lincoln,
              The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Donald L. Shaffer, Attorney at Law, Libby, Montana

      For Respondent:

      William A. Douglas; Douglas & Sprinkle, Libby,
      Montana

FILED

DEC 15 1992

Filed:
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  October 14, 1992

            Decided:  December 15, 1992

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Nineteenth Judicial District, Lincoln County, the Honorable Robert S. Keller presiding. Appellant LaDonna Hilliard (LaDonna) appeals a judgment entered after a bench trial in which the District Court found that she held certain real property in trust for respondent Milton J. Hilliard (Milton) and ordered her to convey the property to him. We affirm.

We note at the outset that the parties seem unclear whether this case involves a resulting trust or a constructive trust. In his complaint to quiet title, Milton asserted that appellant held the property in a constructive trust for his benefit. He also included that theory in his proposed conclusions of law. However, he did not make any allegations of fraud or other wrongful act or present any evidence of such, although these are the basis upon which a constructive trust is found. Gitto v. Gitto (1989). 239 Mont. 47, 778 P.2d 906; Howard v. Dalio (1991), 249 Mont. 316, 815 P.2d 1150. Further, in his brief to this Court, Milton concludes that "a finding by the lower Court of a 'resulting trust' is predicated upon reasonable grounds and should not be disturbed." In her brief, LaDonna argues against a constructive trust and cites a 1947 case, Thompson v. Steinkamp (1947), 120 Mont. 475, 187 P.2d 1018, as authority, even though that case involved a resulting trust.

We also note that the District Court did not make it clear whether it found a resulting trust or a constructive trust in this

2

matter. In its conclusions of law, the court found that a trust had been created, but it did not state whether the trust was a resulting trust or a constructive trust. The court then stated that "LaDonna would be unjustly enriched if she were permitted to retain title to the real property." We look for unjust enrichment of the party holding the property when dealing with constructive trusts. Section 72-33-219, MCA. The court also spoke to the intent of the parties. We look to intent when dealing with resulting trusts. Section 72-33-218, MCA. The court then cited §§ 72-33-220 and 72-33-208(3), MCA, in finding that this action was not barred by the Statute of Frauds. However, it did not cite either § 72-33-218--purchase money resulting trust--or § 72-33-219--constructive trust--to indicate clearly which type of trust it found in this case.

Because Milton actually presented his case on a theory of resulting trust, LaDonna defended that theory, and the District Court made findings on that theory, we will speak as if the parties and the court had proceeded on that theory alone.

Although appellant raises four issues on appeal, we combine and restate them as follows:

1. Do the clean hands doctrine and other principles of equity prevent Milton from claiming a resulting trust on the property in question?

2. Did the District Court err in finding that a resulting trust had been created?

In August 1987, Milton filed a complaint against LaDonna and

3

Harlan's estate seeking to quiet title to certain real property located in Lincoln County. Harlan Hilliard (Harlan) was Milton's son. LaDonna was Harlan's wife. Harlan died on April 10, 1987. LaDonna has since remarried and is now LaDonna Mack.

The incidents giving rise to this matter initially began in Oregon in 1971 when Milton's second marriage ended in divorce. At that time his attorney advised him to avoid holding property in his own name to prevent his ex-wife from levying on it. Therefore, he placed certain real property in Harlan's name. When Milton sold this property, Harlan provided him with a quitclaim deed to complete the transaction. Milton received the money.

Milton eventually liquidated all his holdings in Oregon. He testified that he put the $23,800 he received from those sales in a joint bank account at the United Bank of Libby under the name of "J. Hilliard and LaDonna Hilliard." Once again, the purpose was to avoid putting assets in his own name. LaDonna denies having any knowledge of that account.

Milton intended to move to Libby, Montana, and establish a retail tire store. He located a suitable piece of property--the property at issue here--which was owned by Carl and Velmeda Cole (the Coles). At that time the property included a house, as well as space for a tire shop. The terms of the contract for deed were $25,000 as the purchase price with a $10,000 down payment and equal monthly installments over a ten-year period. In 1974 the property was purchased in Harlan's and LaDonna's names, but the $10,000 down payment came from the account Milton established. The $13,800

4

remaining in the account was partially used to pay for the construction of a tire store on the property. Harlan and LaDonna executed a quitclaim deed and Harlan gave a copy to Milton. Milton testified that the original was to be delivered when the contract for deed was paid off. The contract was paid off on February 4, 1982, and the warranty deed from the Coles to Harlan and LaDonna was recorded. However, Milton did not receive the quitclaim deed at that time.

On August 20, 1984, Harlan and LaDonna executed mutual reciprocal wills in which all property was to go to the surviving spouse. If neither spouse survived, specific property, including the property at issue here if Milton was not alive, was devised to their children. In the event that Milton survived both Harlan and LaDonna, he was to receive the property in question. Harlan died on April 10, 1987 without delivering the original quitclaim deed to Milton. Milton testified that LaDonna assured him that the quitclaim deed would be forthcoming. She denies this.

Milton filed this suit to quiet title. LaDonna claims that Milton is only entitled to a life estate in the property.

I

Do the clean hands doctrine and other principles of equity prevent Milton from claiming a resulting trust on the property in question?

LaDonna contends that Milton cannot now come to the court seeking to enforce a resulting trust when his purpose in placing his assets in Harlan's and her name was to avoid execution by his

5

ex-wife. She quotes extensively from Thompson where this Court was asked to determine the same question under very similar facts. In Thompson, Fred Thompson, the decedent, gave money to the defendant to buy real property in her name. A witness testified that he did this because "'he didn't want to have his second wife, to whom he was paying alimony, to come back and take a crack at the property.'" Thompson, 187 P.2d at 1020. The defendant argued that Thompson's estate should not be entitled to the property because of the general rule that a court of equity will not aid one who transfers his property to another with the intent to hinder, delay, or defraud his creditors. We said in Thompson:

> The general rule is as contended for by defendant but it is not a universal rule. Thus in Scott on Trusts, Vol. 3, section 444, it is said: "Although a resulting trust ordinarily arises where A purchases property and takes title in the name of B, A may be precluded from enforcing the resulting trust because of the illegality of his purpose. If A cannot recover the property, B keeps it and is thereby enriched. The question in each case is whether the policy against the unjust enrichment of the grantee is outweighed by the policy against giving relief to the payor who has entered into an illegal transaction.

> . . .

> The rule is likewise stated in the Restatement of the Law of Trusts, section 422, as follows: "Where the owner of property transfers it inter vivos upon an intended trust which fails for illegality, a resulting trust does not arise if the policy against permitting unjust enrichment of the transferee is out-weighed by the policy against giving relief to a person who has entered into an illegal transaction."

> As stated in the Comments in the Restatement, ". . . It is impossible to state a definite rule which will determine in all cases whether a resulting trust will be imposed or not, since the court will consider all the circumstances involved in the particular case."

6

Thompson, 187 P.2d at 1021-1022. These rules hold true today. Restatement (Second) of Trusts § 422.

In holding that the District Court did not abuse its discretion in finding a resulting trust in Thompson, we noted that no claims had been presented against the decedent's estate and that no creditor had been defrauded. Likewise, in the present case, there is no evidence on the record that Milton defrauded any creditors, including his ex-wife, by following his attorney's advice.

LaDonna also argues that Milton would be unjustly enriched if he is allowed to keep the property because Harlan supervised and worked on the construction of the tire shop. We disagree. In a memorandum to its Findings of Fact, Conclusions of Law and Judgment, the District Court added the following:

> It would appear that Harlan assisted his father in constructing the building initially and in the construction of two additions which were made to the property. There is no evidence indicating that the Plaintiff intended to make a gift of the property to Harlan and LaDonna. The evidence does however tend to suggest that the work done by Harlan was intended as a gift to his father.

Milton financed the property and the improvements. The evidence does not establish that Harlan intended anything other than to assist his father in the matter. Therefore, Milton will not be unjustly enriched.

We hold that the clean hands doctrine and other principles of equity do not prevent Milton from claiming a resulting trust in this property.

7

Did the District Court err in finding that a resulting trust had been created?

As noted above, the District Court concluded that an involuntary or implied trust had been created. Trusts must be established by evidence that is clear, convincing and practically free from doubt. Eckart v. Hubbard (1979), 184 Mont. 320, 325, 602 P.2d 988, 991. Involuntary trusts are equitable in nature. Therefore, in reviewing this matter we are guided by § 3-2-204(5), MCA, which requires this Court to review and determine both questions of fact and law. We are also guided by the rule that this Court will not disturb the lower court's findings of fact unless the record shows a decided preponderance of evidence against them. Gitto, 778 P.2d at 908.

Neither the parties nor the court cited the controlling statute in this case. That statute provides in pertinent part:

> **72-33-218. Purchase money resulting trust.** (1) Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person who paid the purchase price.
>
> (2) Subsection (1) does not apply in any of the following circumstances: . . .
>
> (b) whenever the transferee is a spouse, child, or other natural object of the bounty of the person who paid the purchase price; . . .
>
> (3) Subsection (2)(b) does not apply if the party paying the purchase price manifested an intention that the transferee should not have the beneficial interest in the property.

Subsection (1) states the general rule regarding purchase money resulting trusts. As noted above, Milton placed $23,800 in

8

an account with United Bank of Libby. The evidence showed that $10,000 of the funds in that account were used as down payment for the purchase of the Coles' property. Milton also made all payments on the contract for deed to the Coles. There is no dispute that the property was placed in Harlan's and LaDonna's name. Therefore, this case falls within subsection (1) of this statute.

Subsection (2) seemingly makes subsection (1) inapplicable because this transaction occurred between father and son. This subsection creates a rebuttable presumption that the transaction created a gift. However, subsection (3) provides for a rebuttal by showing that the payor manifested an intention that the transferee should not have a beneficial interest.

The presumption of a gift must be overcome by clear and convincing evidence. In re the Estate of Lettengarver (1991), 249 Mont. 92, 96, 813 P.2d 468, 471. The evidence establishing that this was not a gift begins in Oregon where Milton and Harlan established a practice whereby Milton placed his property in Harlan's name and Harlan quitclaimed it back to him when Milton sold the property. The procedure followed in Libby is wholly consistent with that practice. Also, Milton testified that he located the property and negotiated for its purchase. LaDonna points to the testimony from Roy Cook who testified that he was present when Harlan and LaDonna were discussing the property with the Coles. However, Mr. Cook was not present at the final negotiations. Further, Milton paid for the property and all improvements including the tire shop and two additions to the shop.

9

Milton also collected all the rents and paid all the insurance and taxes and maintained the property. And Milton treated the property as his own by taking exclusive possession, excepting the renters, and using it for his business.

On the other hand, Harlan and LaDonna bore none of the expenses associated with the property. Both parties presented evidence that they claimed depreciation on the property for tax purposes. This does not cast a shadow of doubt in light of the other evidence of record. The facts clearly and convincingly establish that a gift was not intended here.

Further, the copy of the quitclaim deed and statement that the original would be forthcoming are evidence of an understanding between Harlan and Milton that Milton was to have the property. LaDonna admits that she had nothing to do with the dealings between Harlan and Milton and that she was not present during their conversations concerning the property. Although the wills, which left the property to Milton only if he survived Harlan and LaDonna, tend to show a different perspective, we do not look to Harlan's and LaDonna's intent; we look to Milton's intent. Milton's actions manifested a quite different intent.

The facts clearly and convincingly establish that a purchase money resulting trust was intended and created.

Affirmed.

John Conway Harrison
Justice

10

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11