No. 98-050

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 117

DEBBIE GROVES,

        Petitioner and Respondent,

v.

LON and LORALEE CLARK,

        Respondents and Appellants.

FILED

MAY 2 8 1999

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Darcy M. Crum, Great Falls, Montana

    For Respondent:

        David Stuft, Kalispell, Montana

Submitted on Briefs: October 1, 1998

Decided:  May 28, 1999

Filed:

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1    Lon and Loralee Clark (the Clarks), adoptive parents of L.C., appeal from the Findings of Fact, Conclusions of Law, and Judgment entered by the Eighth Judicial District Court, Cascade County, allowing Debbie Groves (Groves), L.C.'s birth mother, monthly weekend visitation and weekly telephone contact with L.C. The Clarks also appeal the court's denial of their motion for a new trial. We affirm.

¶2    The Clarks present the following issues for review:

¶3    1. Did the District Court err in finding that post-adoption visitation with Groves was in the best interest of L.C.?

¶4    2. Did the District Court err in modifying *sua sponte* the parties' post-adoption visitation agreement?

¶5    3. Did the District Court err in denying the Clarks' Rule 59, M.R.Civ.P. motion for a new trial?

## BACKGROUND

¶6    This is the second appeal filed in this case concerning post-adoption visitation between Groves and L.C. A more detailed account of the facts of this case can be found in Groves v. Clark (1996), 277 Mont. 179, 920 P.2d 981 (hereinafter Groves I). To summarize, in January 1994, when L.C. was three years old, Groves signed a document terminating her parental rights to L.C., relinquishing custody of L.C. to Lutheran Social Services (LSS), and consenting to adoption. Groves and the Clarks signed a written visitation agreement which provided the following: Groves would have unrestricted visitation with L.C. so long as she

gave the Clarks two days notice; Groves would have unrestricted telephone contact with L.C.; and Groves would have the right to take L.C. out of school in the event she had to "go to Butte for some emergency." This agreement was drafted by the LSS and neither party consulted an attorney before signing it. In February 1994, the District Court entered an order terminating Groves' parental rights to L.C. and awarding custody of L.C. to LSS. In September 1994, the Clarks legally adopted L.C.

¶7 Groves and the Clarks abided by the terms of the visitation agreement until June 5, 1995, when Groves notified the Clarks that she wanted to take L.C. to Butte for the weekend and the Clarks refused. The Clarks told Groves that she was welcome to visit L.C. in their home, but could not take L.C. on extended out-of-town trips. Several weeks later, Groves filed a petition requesting specific performance of the visitation agreement. The Clarks filed an objection and brief in opposition to the petition which the parties agreed could be treated as a motion for summary judgment.

¶8 In December 1995, the District Court denied Groves' petition for specific performance of the visitation agreement. The court concluded that, pursuant to § 40-8-125, MCA, and our holding in In re C.P. (1986), 221 Mont. 180, 717 P.2d 1093, the document whereby Groves terminated her parental rights and relinquished custody of L.C. to LSS constituted the final, controlling agreement concerning relations between Groves and L.C. Because that document did not reserve any visitation, the court concluded that Groves was not entitled to post-

3

adoption visitation. Based on these conclusions, the court held that the post-adoption visitation agreement was void and unenforceable. Groves appealed to this Court.

¶9 This Court reversed the District Court concluding that In re C.P. was distinguishable from the instant case. Groves I, 277 Mont. at 183, 920 P.2d at 983. We noted that in In re C.P., the parties had not discussed visitation rights of the birth parents let alone reached any agreement. In contrast, Groves and the Clarks specifically bargained for the right of visitation and voluntarily signed a written notarized agreement which provided the terms of the visitation arrangement. Groves I, 277 Mont. at 183, 920 P.2d at 983-84. We further noted that after deciding In re C.P., the Montana Legislature enacted § 40-8-136, MCA (1995), which we interpreted as providing for the recognition of agreements for post-adoption contact and visitation. Groves I, 277 Mont. at 184-85, 920 P.2d at 984. On this basis, we held:

> [B]irth parents and prospective adoptive parents are free to contract for post-adoption visitation and . . . trial courts must give effect to such contracts when continued visitation is in the best interest of the child.

Groves I, 277 Mont. at 186, 920 P.2d at 985. We remanded the case to the District Court for a hearing on whether enforcement of the parties' visitation agreement would be in the best interest of L.C. Groves I, 277 Mont. at 187, 920 P.2d at 985-86.

¶10 The District Court held a hearing on September 3, 1997. Based on the evidence produced at trial, the court found that a bond existed between Groves and L.C. and that it was highly likely L.C. would suffer from issues of abandonment, identity, and grieving unless

4

appropriate visitation with Groves was granted. Ultimately, the court found that continued visitation between Groves and L.C. was in L.C.'s best interest. The court ordered continued visitation and telephone contact between Groves and L.C., but not in accordance with the terms of the parties' liberal visitation agreement. Rather, the court found that a more structured visitation arrangement was in the best interest of L.C. Specifically, the court granted Groves unsupervised monthly weekend visitation with L.C. and required the parties to share equally in the transportation costs. Additionally, the court granted Groves telephone contact with L.C. at least once per week. The court recommended that the parties seek adoption counseling and attempt to agree upon future visitation modifications that may be appropriate as L.C. matures.

¶11 Unsatisfied with this outcome, the Clarks filed with the court a motion for a new trial pursuant to Rule 59, M.R.Civ.P. In their brief in support of the motion, the Clarks set forth evidence which they alleged was newly discovered and asked the court to reconsider whether post-adoption visitation between Groves and L.C. was in L.C.'s best interests. The Clarks also argued that the court was without jurisdiction to modify *sua sponte* the express terms of the visitation agreement.

¶12 In an order dated December 15, 1997, the court denied the motion. The court stated that the evidence presented at trial overwhelmingly supported the finding that continued visitation between Groves and L.C. was in the best interest of L.C. The court stated that the post-trial evidence presented by the Clarks was not "newly discovered" because the Clarks

5

had ample opportunity before trial to discover the evidence. The court stated that its "best interests" ruling was limited to the evidence produced at trial, but suggested that the post-trial evidence presented by the Clarks could be considered upon a properly filed petition for modification of visitation rights. Regarding the *sua sponte* modification of the parties' visitation agreement, the court stated that modification was within its discretion in accordance with determining the best interests of the child. More facts will be provided as necessary to dispose of the issues raised.

## DISCUSSION

*Issue 1*

¶13 **Did the District Court err in finding that post-adoption visitation with Groves was in the best interest of L.C.?**

¶14 Like other family law disputes involving parental visitation, we review a district court's findings relating to a birth parent's right to post-adoption visitation to determine whether those findings are clearly erroneous. *See* In re Marriage of Syverson (1997), 281 Mont. 1, 21, 931 P.2d 691, 703. A finding is clearly erroneous if it is not supported by substantial evidence, the court misapprehended the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made. Syverson, 281 Mont. at 21-22, 931 P.2d at 703.

¶15 The Clarks make several arguments in support of their assertion that the court erred in finding that visitation between Groves and L.C. was in L.C.'s best interests. The first argument is somewhat confusing. The Clarks first quote verbatim § 40-4-212, MCA, which

6

lists the factors that a district court may consider when conducting a "best interests" analysis. The Clarks assert that this "best interests" standard controls in determining whether a post-adoption visitation agreement should be enforced. However, in the following paragraphs, the Clarks assert that the adoptive parents' wishes are paramount in deciding whether a post-adoption visitation agreement should be enforced. The Clarks cite several cases from other jurisdictions purportedly holding that adoptive parents have the right to determine whether it is in the best interest of the adopted child to maintain contact with the birth mother. *See e.g.,* People in Interest of M.M. (Colo. 1986), 726 P.2d 1108; In re Adoption of Hammer (Ariz. 1971), 487 P.2d 417; Commonwealth ex rel. Flannery v. Sharp (Pa. 1943), 30 A.2d 810; Spencer v. Franks (Md. 1937), 195 A. 306. The Clarks also cite cases from other jurisdictions purportedly holding that the mere fact that the adoptive parents oppose visitation provides a sufficient basis for finding that visitation is not in the best interest of the child. *See e.g.,* Geri v. Fanto (N.Y. 1974), 361 N.Y.S.2d 984; In re Benjamin (N.Y. 1978), 403 N.Y.S.2d 877.

¶16 We reject the Clarks' assertions that the adoptive parents have sole discretion, or that the adoptive parents' wishes are paramount, in deciding whether a post-adoption visitation agreement should be enforced. The law in Montana, which also happens to be the law of this case, is clear: whether a post-adoption visitation agreement is enforceable shall be decided by the District Court pursuant to a "best interests" analysis. Groves I, 277 Mont. at 186-87,

920 P.2d at 985-86. The adoptive parents' wishes is but one factor among many to be considered by the District Court. *See* Section 40-4-212, MCA.

¶17 Next, the Clarks argue that the court did not adequately consider and evaluate the evidence when applying the "best interests" standard. The Clarks argue that the court should have disregarded the testimony of Groves' expert witness and should have attached greater weight to the testimony of the Clarks' expert witness. The Clarks also assert that the court did not consider evidence that two people had observed bruises on L.C.'s body before the adoption was finalized, and evidence that L.C. had made statements to people indicating she was unhappy and did not wish to have visitation with Groves. Lastly, the Clarks assert that the evidence did not support a finding that a bond existed between Groves and L.C. The Clarks contend that no bond could have existed between L.C. and Groves because their visitation sessions prior to trial were short and infrequent.

¶18 We determine that the court adequately considered and evaluated the evidence produced at trial in applying the "best interests" standard. The court heard each party's expert witnesses and found Groves' experts to be more credible. In cases tried to the court without a jury, it is the duty and function of the court to resolve conflicts in evidence. In re Marriage of Penning (1989), 238 Mont. 75, 78, 776 P.2d 1214, 1216. The credibility of witnesses and the weight to be afforded their testimony is a matter left to the sound discretion of the District Court. Rule 52(a), M.R.Civ.P.; Keebler v. Harding (1991), 247 Mont. 518, 523, 807 P.2d 1354, 1357.

8

¶19 With regard to the alleged bruising found on L.C.'s body, this evidence was not presented at trial. With regard to the alleged statements made by L.C. to various persons that she was unhappy visiting Groves, some of this evidence was presented at trial, and some was not. We cannot fault the District Court for not considering evidence which was not presented at trial and which was not subject to cross-examination. Parties on appeal are bound by the record and may not add additional matters in briefs or appendices. State v. Hatfield (1993), 256 Mont. 340, 344, 846 P.2d 1025, 1028. To the extent some evidence of L.C.'s unhappiness with visitation was presented to the District Court, the record reflects that the court adequately considered this evidence. In its findings of fact, the court stated:

> Respondents [the Clarks] testified that visitation adversely affected L.C. in that afterward she would evidence insecurity about her adoption status, would be moody and difficult to discipline. On the other hand, the court heard the testimony of the Petitioner's [Groves'] experts including Kathy Gerhke [an adoptive parenting instructor] and Debbie O'Brien [a family counselor] which explained this as a normal occurrence. Based on their testimony, this court finds that it is highly likely L.C. will suffer from issues of abandonment, identity, and grieving unless appropriate visitation is granted. L.C. lived with her mother for over three years. The evidence, including from a visitation facilitator, was that visitation was a happy experience for L.C.

¶20 We also reject the Clarks' assertion that the evidence did not support a finding that a bond existed between Groves and L.C. The record demonstrates that L.C. and Groves were together for the first three years of L.C.'s life. The court heard testimony from Debbie O'Brien, a marriage and family counselor who had been counseling Groves since August 1996. Ms. O'Brien testified that in her opinion, a bond existed between L.C. and Groves. Although the majority of post-adoption visitation sessions between L.C. and Groves were

9

short and infrequent, this does not necessarily mean that no bond existed between L.C. and Groves. We note that several of Groves' attempts to have visitation with L.C. were frustrated by the Clarks' own actions. The Clarks often refused to talk to Groves. At trial, Mrs. Clark admitted that when Groves called her about attending L.C.'s birthday party, she pretended she could not hear who was calling. The record also shows that the Clarks outright refused visitation. We hold that substantial evidence existed to support the finding that a bond existed between L.C. and Groves.

¶21 Throughout their brief on appeal, the Clarks assert that visitation with Groves is not in L.C.'s best interests because the Clarks do not know the details of the visitation such as where L.C. will be, what L.C. will be doing, and with whom L.C. will be associating. The Clarks have expressed concern over L.C.'s sleeping arrangements at Groves' residence. The Clarks disapprove of L.C. snowmobiling and riding in a car without wearing a seatbelt. The Clarks also complain that their move from Great Falls to McLeod makes the current visitation arrangement unworkable.

¶22 These concerns were not presented to the District Court at trial. We again stress that the parties on appeal are bound by the record and may not add additional matters in briefs or appendices. Hatfield, 256 Mont. at 344, 846 P.2d at 1028. We will not consider these concerns in determining whether the court erred in making its findings. These concerns are more appropriately raised in a petition for modification of visitation rights.

10

¶23 Upon the foregoing, we determine that the court's finding that visitation between Groves and L.C. was in the best interest of L.C. was not clearly erroneous. The finding was supported by substantial evidence, the court did not misapprehend the effect of the evidence, and we do not believe a mistake was committed.

*Issue 2*

¶24 **Did the District Court err in modifying *sua sponte* the parties' post-adoption visitation agreement?**

¶25 The court's decision to modify the parties' visitation agreement pursuant to the best interests of the child was a discretionary ruling. The standard of review of discretionary trial court rulings is abuse of discretion. *See* May v. First Nat'l Pawn Brokers, Ltd. (1995), 270 Mont. 132, 134, 890 P.2d 386, 388. In evaluating abuse of discretion, we look to whether the court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. In re Marriage of Wessel (1986), 220 Mont. 326, 333, 715 P.2d 45, 50.

¶26 In its findings of fact, the court noted that the original visitation agreement was "inartfully drawn" by the LSS without benefit of legal counsel and that its terms were vague. As previously mentioned, the original agreement contemplated that Groves could have visitation with L.C. whenever she wanted so long as she gave the Clarks two days notice. No time restriction on visitation was incorporated into the agreement. The court found that a more structured visitation arrangement, monthly weekend visitation, was in the best interests of L.C. Later, in ruling upon the Clarks' motion for a new trial, the court held that

11

modification of the parties' original visitation agreement was within its discretion in accordance with determining the best interests of L.C.

¶27 The Clarks argue that the court erred in modifying *sua sponte* the terms of the original visitation agreement because no statute or other legal authority exists granting the court this power. The Clarks argue that when the court found that visitation was in the best interests of L.C., the court was bound to enforce the parties' visitation agreement as written.

¶28 We agree with the District Court that modification of the parties' original visitation agreement was within its discretion in accordance with determining the best interests of L.C. The policy of this state is that "[i]n matters relating to children, the best interests of the children are paramount." In re Marriage of Widhalm (1996), 279 Mont. 97, 101, 926 P.2d 748, 750 (citing In re Marriage of Mager (1990), 241 Mont. 78, 80-81, 785 P.2d 198, 200). It is a well-established rule that parties cannot make binding agreements concerning the support, custody, or visitation of children. Widhalm, 279 Mont. at 101, 926 P.2d at 750 (citations omitted). Although this rule has been expressed in the context of separation agreements made between spouses, *see* § 40-4-201(2), MCA, we believe it applies equally to post-adoption agreements made between an adopted child's birth parents and adoptive parents. Moreover, failure to apply this rule to disputes involving post-adoption visitation agreements could potentially lead to absurd results. It would be incongruous for a court to hold that visitation is in the best interest of a child and then enforce a visitation agreement that was not in the best interest of the child. For these reasons, we determine that the District

12

Court did not abuse its discretion in modifying the parties' post-adoption visitation agreement.

*Issue 3*

**¶29 Did the District Court err in denying the Clarks' Rule 59, M.R.Civ.P. motion for a new trial?**

¶30 The Clarks based their motion for a new trial on an allegation of newly discovered evidence. The Clarks asserted that following the District Court's September 1997 "best interests" hearing, they hired new counsel. They asserted that the new counsel had discovered material evidence that was not presented to the District Court but that could possibly produce a different outcome upon retrial. Some of this evidence consisted of deposition testimony of two witnesses who reported seeing bruises on L.C.'s body prior to the adoption. These depositions were taken by the Clarks in 1996 in preparation for trial but were not introduced at trial. The remainder of the evidence consisted of post-trial affidavits executed by the Clarks and two other witnesses in which the affiants related statements made by L.C. purportedly indicating that she did not wish to have visitation with Groves. In denying the motion, the court stated that a post-trial change of counsel was not germane to the issue of newly discovered evidence. The court determined that the alleged newly discovered evidence was discoverable before trial, and that the Clarks had ample time, more than a year, in which to discover the evidence.

¶31 The Clarks assign error to the court's denial of their motion for a new trial. In support of their claim of error, the Clarks assert that the court made its "best interests" determination

13

on the basis of an incomplete record and argue that the court should have considered the "new" evidence because it was material and not cumulative.

¶32    The decision to grant a new trial based upon newly-discovered evidence is within the discretion of the trial judge and will not be overturned absent a showing of manifest abuse of discretion. Fjelstad v. State, through Dept. of Highways (1994), 267 Mont. 211, 220, 883 P.2d 106, 111.

¶33    Section 25-11-102, MCA, provides that a new trial may be granted for several reasons which materially affect the substantial rights of a party. One of these reasons is the discovery of new evidence which is material to the party applying for a new trial and which that party could not, with reasonable diligence, have discovered and produced at trial. Section 25-11-102(4), MCA. A party moving for a new trial on the basis of newly discovered evidence must show that: (1) this evidence came to the party's knowledge since the trial; (2) it was not through want of diligence that the evidence was not discovered earlier; (3) the evidence is so material that it would probably produce a different result upon retrial; (4) the evidence is not merely cumulative; and (5) the evidence does not tend only to impeach the character or credit of a witness. In re Marriage of Neal (1994), 267 Mont. 455, 461-62, 884 P.2d 789, 793-94.

¶34    In this case, the Clarks did not show that the new evidence came to their knowledge since the trial, or that they could not have discovered the new evidence with reasonable diligence. The record shows that the depositions were in the Clarks' possession before

14

commencement of trial. Similarly, there is no evidence in the record indicating that the contents of the affidavits could not have been discovered with due diligence before the trial. We agree with the District Court that a post-trial change of counsel is irrelevant to the issue of whether evidence could have been discovered prior to trial. We hold the District Court did not abuse its discretion in refusing to grant a new trial on the basis of newly discovered evidence.

¶35 Affirmed.

Justice

We Concur:

Justices