No. 99-475

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 127

299 Mont. 506

1 P. 3d 358

---

IN THE MATTER OF THE ESTATE OF

F. MORRIS SILVER, a/k/a MORRIS SILVER,

a/k/a F. M. SILVER,

Deceased.

---

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

Honorable John W. Larson, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Samuel M. Warren, St. Peter and Warren, P.C., Missoula, Montana

For Respondent:

Thomas H. Boone and Robert J. Sullivan, Boone, Karlberg & Haddon,

P.C., Missoula, Montana

Sherman V. Lohn, Garlington, Lohn and Robinson, Missoula, Montana

_____

Submitted on Briefs: January 13, 2000
Decided: May 9, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1 Jack Silver appeals a ruling of the Fourth Judicial District Court, Missoula County, that cash placed in a certain safe deposit box is property of the Estate of his father, F. Morris Silver. We affirm.

¶2 We restate the issues as follows:

¶3 1. Did the District Court err in permitting hearsay testimony?

¶4 2. Did the court err in admitting extrinsic evidence regarding the safe deposit box lease?

¶5 3. Did the court err in failing to conclude that the contents of the safe deposit box were a jointly-held asset pursuant to § 70-1-308, MCA, and the box lease agreement?

¶6 4. Did the court err in applying gift theory rather than contract theory in determining ownership

of the contents of the safe deposit box?

¶7 5. Did the court err in awarding the contents of the safe deposit box to the Estate?

¶8 6. Did the court err in concluding that Jack exercised unauthorized control over the contents of the safe deposit box?

¶9 Jack Silver is the adult son and only child of the decedent, F. Morris Silver. Jack lives in California and is a professor of mathematics at the University of California at Berkeley.

¶10 In December 1995 and January 1996, Jack visited his father at Morris's home in Missoula, Montana. Morris was then eighty-five years old and a recent widower. He was suffering from Parkinson's disease and was scheduled to be hospitalized for hernia surgery.

¶11 It was agreed that Morris would need care providers to assist him when he returned home from the hospital. Jack was concerned about the presence of strangers in the house, because Morris had approximately $203,987 in cash stored there. Jack recommended that the cash be placed in a safe deposit box, and Morris agreed.

¶12 At Morris's request, his friend and employee Kathleen St. John called a Missoula bank to determine how arrangements could be made to open a safe deposit box, given that Morris was unable to go to the bank. Kathleen made arrangements for Morris and Jack to lease a safe deposit box. At Morris's direction, Kathleen typed a document stating: "I, F.M. Silver authorize my son Jack Silver to purchase a 10 x 15 x 21 safety deposit box in my name. I also wish for Jack Silver to be a signer allowed access to the safety deposit box." Morris signed this statement, and it was notarized.

¶13 Kathleen and Jack delivered Morris's signed statement to the bank. A bank employee filled out a bank form titled "Safe Deposit Box Lease Agreement" and placed an "X" in the box marked "joint." Jack signed the lease and took the bank form to Morris to sign. At Morris's direction, Jack and Kathleen then delivered the cash to the bank and placed it in the safe deposit box. Jack kept one key to the safe deposit box, and Morris kept another one.

¶14 On August 21, 1997, Jack exercised his right under the safe deposit box lease to access the box. He removed the cash from the box, placing it in his own safe deposit box at the same bank. This action was taken without Morris's direction, consent, or knowledge. Morris died eight days later.

¶15 Carolyn Sauro is the personal representative for Morris's estate, a substantial portion of which he bequeathed to a charitable foundation. Jack moved for summary judgment in the probate proceeding that he is the legal owner of the contents of the safe deposit box. The Estate opposed Jack's motion, and a hearing was held to resolve factual issues. Following the hearing, the court entered findings and conclusions in which it determined

that Morris retained ownership of the cash and ordered Jack to return possession of the $203,987 to the Estate. Jack appeals.

## Standards of Review

¶16 On evidentiary rulings, this Court's standard of review is whether the trial court abused its discretion. *Harwood v. Glacier Elec. Co-op, Inc.* (1997), 285 Mont. 481, 490, 949 P.2d 651, 657. We will uphold a district court's findings of fact if they are supported by substantial evidence and are not otherwise clearly erroneous. *Tipp v. Skjelset* (1997), 285 Mont. 274, 277, 947 P.2d 480, 481-82. This Court reviews conclusions of law to determine whether the district court's interpretation of the law was correct. *Tipp*, 285 Mont. at 277, 947 P.2d at 482.

## Issue 1

¶17 Did the District Court err in permitting hearsay testimony?

¶18 Over Jack's objection, the District Court allowed testimony by Kathleen St. John and Carolyn Sauro regarding statements Morris made to them concerning the money in the safe deposit box. Kathleen stated by affidavit that when Morris agreed to put the money in the safe deposit box, he asserted that it was still his. She stated that she never heard him say he intended to make a gift of the money to Jack or that he did not consider it to be his money. Carolyn stated in her affidavit that Morris was most emphatic that the contents of the safe deposit box were to remain his. She also attested that at no time did Morris indicate he had made any gift to Jack of the contents of the safe deposit box and once during the summer of 1997 he said he may have to go to the safe deposit box to secure some of his cash.

¶19 In *Anderson v. Baker* (1982), 196 Mont. 494, 641 P.2d 1035, this Court held that the admission of parol evidence was proper to show the intention of the parties when a depositor into a joint bank account indicated an intent contrary to what was shown on the bank account signature card.

> We are also mindful that the signature cards are forms containing language drafted by the depository institution. While the language thereon may very well describe the agreements between the depositor and the depository, it can hardly be expected to accurately express the intentions and relationships between the joint tenants about

which the depository typically has little, if any, knowledge. Where the donor-depositor, as in the instant suit, indicates during her lifetime that her intent is other than that revealed on the signature card, we hold such evidence admissible.

*Anderson, 196 Mont. at 500-01, 641 P.2d at 1038. In that case, this Court ruled that consideration of the circumstances under which the signature cards were executed established that no gift was intended when the signature cards were signed. Anderson, 196 Mont. at 502, 641 P.2d at 1039.*

¶20 In *Thompson v. Steinkamp* (1947), 120 Mont. 475, 187 P.2d 1018, Thompson had given Steinkamp money to purchase real property in which title was then held in Steinkamp's name. Following Thompson's death, the issue was whether Steinkamp held the property in trust for the benefit of Thompson's estate. In ruling admissible evidence of statements Thompson had made relating to his intent, this Court said:

> Here the issue between the parties depended upon the intention with which Mr. Thompson furnished the money to defendant. Whether it was a gift to her as she contends or whether, as plaintiff contends, it was his purpose to have her buy the property in question for him, depended upon Mr. Thompson's intent. "When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self serving." (Citations omitted.)

*Thompson, 120 Mont. at 481, 187 P.2d at 1021.*

¶21 Similarly, in the present case, the contested testimony is evidence of Morris's stated intent to retain ownership of the cash which he had placed in the safe deposit box. Rule 803(24), M.R.Evid., provides that statements not covered by the enumerated exceptions to the hearsay rule will be allowed if comparable circumstantial guarantees of trustworthiness exist. Here, the statements put into context Morris's opening of the safe deposit box and the placement of the cash within the box. We hold that the District Court did not abuse its discretion in admitting the testimony about Morris's statements of intent concerning the money which he arranged to have placed in the safe deposit box.

## Issue 2

¶22 Did the court err in admitting extrinsic evidence regarding the safe deposit box lease?

¶23 Jack points out that under § 28-2-904, MCA, a written contract supersedes all oral negotiations or stipulations which preceded the execution of the document. He argues that the fact that the safe deposit box lease form was prepared by a bank employee is not relevant to interpretation of the document and that the court therefore erred in finding that Morris did not prepare the lease form or check the box on the form marked "joint." Jack points out that Morris duly signed the lease and that he is presumed to have read and understood it.

¶24 The District Court's conclusions do not indicate that they turned on the evidence or the finding to which Jack here objects. Rather, the court gave other reasons for its conclusions. We hold that the District Court did not abuse its discretion by admitting the extrinsic evidence regarding the safe deposit box lease, and we further hold that the finding that Morris did not select the form of safe deposit box lease or check the box on the form marking the box as joint is supported by substantial credible evidence in the record and is not otherwise clearly erroneous.

Issue 3

¶25 Did the court err in failing to conclude that the contents of the safe deposit box were a jointly-held asset pursuant to § 70-1-308, MCA, and the box lease agreement?

¶26 Jack contends that the only basis for the court's conclusion that the contents of the safe deposit box were not jointly-held assets is the self-serving opinion of the Estate's personal representative, as established in her federal estate tax return form. He asserts that both § 70-1-308, MCA, and the safe deposit box lease agreement support his contention that the contents of the safe deposit box were jointly held.

¶27 Section 70-1-308, MCA, provides:

> **Safe deposit box--joint tenancy. When so specified in the agreement granting for a term of time the right in two or more persons to use or occupy any safe or box, commonly referred to as a safe deposit vault or box for the safekeeping of valuables, such interest and estate created in the grantees shall be a joint tenancy in such vault or box and pass to the survivors and survivor upon the death of one or more of the joint tenants with right in such survivors and survivor to have access to and possession of such vault or box and the contents thereof under the terms of the agreement.**

Jack asserts that under § 70-1-308, MCA, he is the surviving joint co-owner of the cash in

the safe deposit box.

¶28 The above statute provides for joint access to and possession of the safe deposit box and its contents. The statute does not provide for joint ownership of the contents of the safe deposit box. Nor does the language in § 70-1-308, MCA, regarding the rights of surviving joint tenants authorize Jack's removal of the cash from the safe deposit box while Morris was still alive. By definition under the statute, Jack was not a survivor with a right of possession when he removed the cash from the safe deposit box.

¶29 Similarly, nothing in the safe deposit box lease agreement established the rights of the lessees as between each other. Under the lease agreement, each of the joint lessees

> may have access to the safe deposit box. Each of you also has the right to exchange the box or terminate the lease, surrender the box and receive any rent refund due, consent to an increase in rent, or appoint a deputy. Each of you will be liable for the full amount of all payments due under this agreement. If one of you should die, declare bankruptcy, or become incapacitated, we may grant access to the other renter, subject to any restrictions of law or No. 3 above. We may also grant access to the personal representative of the renter that dies.

The lease does not create joint ownership of or right of survivorship in the contents of the box-it provides only for joint access to the box and specifically acknowledges that the personal representative of a joint renter who dies may also have access to the box. The lease does not attempt to determine the ownership of contents of the box as between box lessees.

¶30 Under this argument, Jack also cites *Malek v. Patten* (1984), 208 Mont. 237, 678 P.2d 201. In *Malek*, this Court held that certificates of deposit held in a joint safe deposit box belonged to the surviving joint box holder, despite the fact that they had been purchased by the other joint box holder, who had since passed away. The decision in *Malek*, however, hinged on the fact that the decedent had purchased the certificates of deposit in the joint names of both safe deposit box holders. *Malek*, 208 Mont. at 243-44, 678 P.2d at 204.

¶31 We hold that the District Court was correct in concluding that the contents of the safe deposit box were not a jointly-held asset by virtue of § 70-1-308, MCA, or the safe deposit box lease agreement.

## Issue 4

¶32 Did the court err in applying gift theory rather than contract theory in determining ownership of the contents of the safe deposit box?

¶33 Jack argues that he was the owner of the cash under contract theory pursuant to § 70-1-308, MCA. That argument has no merit, as discussed above under Issue 3.

¶34 Jack also points out that this Court has resisted the application of gift theory with respect to joint bank accounts, citing *Casagranda v. Donahue* (1978), 178 Mont. 479, 585 P.2d 1286, and *State Board of Equalization v. Cole* (1948), 122 Mont. 9, 195 P.2d 989. He states that under the "Montana Rule," when parties have created a joint account by virtue of a written agreement with a financial institution, the terms of that agreement control the disposition of the account and additional evidence is unnecessary.

¶35 Both *Casagranda* and *Cole* involved joint bank accounts, not safe deposit boxes. As discussed above, while Jack clearly had joint access to the safe deposit box under a contract theory, that is not the issue here presented.

¶36 Jack has cited no contract theory under which he might properly be declared the owner or co-owner of the cash that was in the safe deposit box. We hold that the District Court did not err in applying gift theory rather than contract theory in determining ownership of the contents of the safe deposit box.

## Issue 5

¶37 Did the court err in awarding the contents of the safe deposit box to the Estate?

¶38 Jack points out that the District Court made no determination as to who owned the cash when it was placed in the safe deposit box. He states that the only evidence adduced at trial was that the cash was his when it was deposited into the box. Therefore, he asserts, the court's judgment has the effect of transferring his property to Morris upon Morris's death.

¶39 Although Jack testified speculatively at trial that the cash might have been a "family asset," he did not argue to the District Court that the cash was his sole property. At trial, his position was that the cash was joint property. Jack now asserts for the first time that the

cash was his sole property. This Court will not address issues on appeal which were not properly raised before the district court in motions, briefs, and arguments. *Nason v. Leistiko*, 1998 MT 217, ¶ 13, 290 Mont. 460, ¶ 13, 963 P.2d 1279, ¶ 13.

¶40 At trial, Jack testified that Morris had told him, when he was gathering up the cash to put into the safe deposit box, that he should keep the cash "for a rainy day." Jack further testified that both he and Morris considered the cash a "family asset," and that most of it had originated with Morris's parents.

¶41 Jack's testimony about Morris's perception as to the ownership of the cash was contradicted by the testimony of Kathleen and Carolyn that Morris clearly intended to retain ownership of the cash. The relative credibility of the witnesses was thus at issue, and we will not substitute our judgment for that of the trier of fact as to the credibility of witnesses. *Groves v. Clark*, 1999 MT 117, ¶ 18, 294 Mont. 417, ¶ 18, 982 P.2d 446, ¶ 18.

¶42 The court concluded "Morris made no gift of the said cash placed in the said safe deposit box to Jack." Jack maintains gift theory would be applicable only if it had been established that Morris owned the cash before it was placed in the safe deposit box. He points out that the court made no finding that the cash belonged to Morris before it was placed into the box. However, the evidence was that the cash had been in Morris's possession for years, in various places throughout his house, where Jack had not resided for over thirty years. That the cash was Morris's is also supported by the evidence of Morris's statements to Kathleen and Carolyn to that effect.

¶43 We hold that the District Court's conclusion that Morris retained ownership of the $203,987 placed in the safe deposit box was correct, and the court did not therefore err in awarding the contents of the safe deposit box to the Estate.

Issue 6

¶44 Did the court err in concluding that Jack exercised unauthorized control over the contents of the safe deposit box?

¶45 Jack contends that the District Court's conclusion that he exercised unauthorized control over the contents of the safe deposit box is inconsistent with both the lease agreement on the box and the court's finding that "[o]n August 21, 1997, Jack exercised his rights under the Lease and removed the entire contents of the Box, and placed the same

in another safe deposit box at the Bank."

¶46 No inconsistency exists. The finding that Jack exercised his rights under the Lease relates to the relationship between Jack and the bank. The Estate acknowledges that under the box lease, Jack could enter the box. That right of entry, however, does not determine ownership of property stored in the box and does not establish a right in Jack to remove items from the box which were not his. We hold that the conclusion that Jack exercised unauthorized control over the contents of the safe deposit box is correct.

¶47 Because Jack has established no error under any of the arguments he has raised, we affirm the judgment of the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler concurring.

¶48 I concur with the result of the majority opinion. However, in doing so, I do not agree with the reasoning given by the majority for resolving issue No. 1 which is related to the affidavit testimony of Kathleen St. John and Caroline Sauro.

¶49 If the testimony admitted by affidavit was truly hearsay, I would conclude that it was inadmissible, since it does not come within any of the exceptions to Rule 802 found at Rule 803 of the Montana Rules of Evidence.

¶50 However, I conclude that the evidence to which Jack Silver objects was not hearsay evidence. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801 (c). As noted in *State v. Newman* (1973), 162 Mont. 450, 457, 513 P.2d 258, 262, cited in the Commission Comment to Rule 801, hearsay is inadmissible because it rests "for its value upon the credibility of the out-of-court asserter."

¶51 In this case, the out-of-court statement related by Kathleen St. John and Caroline Sauro was that Morris "asserted that the money was still Morris'." The affidavit testimony was not offered to prove the truth of what Morris asserted and did not depend on Morris' credibility. The affidavits were offered, instead, to prove that Morris actually made the statement, and, therefore, depended solely on the credibility of Kathleen St. John and Caroline Sauro.

¶52 If Morris made the statement related by the two witnesses, then the statement was in fact probative of his intent without regard to whether he was being truthful.

¶53 For these reasons, I concur with the result of the majority opinion, although I do not agree with everything that is said therein.

/S/ TERRY N. TRIEWEILER