No. 99-154

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 137N

BOYD IRVIN BROELL, an Individual,

Plaintiff and Respondent,

v.

ESTATE OF IRVIN C. BROELL, Deceased;

J.E. BURKE, in his capacity as Public

Administrator of the Estate of Irvin C. Broell,

Deceased; MARY A. BROELL, an Individual;

CARLA BROELL WILLIAMS, an Individual;

ELLEN BROELL ARTHUN, an Individual;

FIRST NATIONAL PARK BANK; and ALL

OTHER PERSONS, UNKNOWN, claiming or

who might claim any right, title, estate, or

interest in or lien or encumbrance upon the real

property described in the Complaint adverse to

Plaintiff's ownership or any cloud upon

Plaintiff's title thereto, whether such claim or

possible claim be present or contingent,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Sixth Judicial District,

In and for the County of Park,

The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Larry Jent, Williams & Jent, LLP, Bozeman, Montana

For Respondent:

Jeannette Ellen Berry, Berry Law Office, Bozeman Montana

---

Submitted on Briefs: February 10, 2000

Decided: May 25, 2000

Filed:

---

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to

West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Boyd's mother, Mary A. Broell, and his sister, Ellen Broell Arthun, (Mary and Ellen) appeal from the Amended Judgment entered by the Sixth Judicial District Court, Park County, in favor of Boyd Irvin Broell (Boyd). The sole issue presented on appeal is whether the District Court erred by imposing a purchase money resulting trust in favor of Boyd Broell. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Boyd's paternal grandparents purchased a ranch near Wilsall, Montana, in the 1940s. As a child, Boyd spent his summers working on the ranch. In June 1979 Boyd moved to the ranch permanently to help his grandmother keep the ranch operating. In August 1979 Boyd entered into a common law marriage with Marguerite Lorene McIntosh (Lori) and she and the couple's son moved into Boyd's mobile home located on the ranch. At that time, Boyd's grandfather was ill and subsequently died in November 1979. Boyd's grandmother inherited the ranch upon her husband's death.

¶4 In 1983 Boyd's parents, Irvin and Mary Broell, permanently separated but did not get divorced. Mary resided in a home in Livingston purchased during the marriage while Irvin continued to work for the highway department in various locations around the state until his retirement in 1989. Irvin paid all the bills associated with the house in Livingston, paid for Mary's pharmacy bills, and provided Mary with money for living expenses. At the time of his separation from his wife, Irvin named Boyd as a joint signatory of his checking account.

¶5 Just prior to his retirement, Irvin began renting a room in the home of a friend in East Helena. Irvin continuously rented from his friend until his death in 1995. While he primarily resided in East Helena, Irvin frequently spent time at the ranch assisting in its operation.

¶6 Boyd's grandmother died in the spring of 1989 and Irvin Broell was appointed as the personal representative of her estate. With the financial assistance of his wife Lori and his father Irvin, as well as a purchase money loan, Boyd purchased the ranch from his grandmother's estate for the sum of $69,500. As a result of the sale, the heirs of the estate, including Irvin, Boyd, and Boyd's two sisters Ellen and Carla, each received $8000. Irvin gifted his share to Boyd to help facilitate Boyd's purchase of the ranch.

¶7 Boyd and his wife Lori separated in 1989. While Boyd continued to work the ranch, he moved out of the mobile home allowing his wife and son to continue living there. On January 18, 1990, Boyd was arrested for driving under the influence and was later charged and convicted of criminal possession of dangerous drugs with intent to sell and criminal possession of dangerous drugs. Boyd was sentenced to seven years in prison with five years suspended. Following his appeal of the court's denial of his motion to suppress, Boyd was remanded to the Montana State Prison in June 1991 to begin serving his sentence.

¶8 Boyd and his wife Lori personally had made all the mortgage payments for the ranch until mid-1991. Following his son's conviction and incarceration, Irvin spent more time at the ranch and stayed with Lori and his grandson to help them keep the ranch operating in Boyd's absence.

¶9 At about the same time, Lori retained an attorney and commenced dissolution proceedings. Based on Lori's petition for dissolution and Boyd and Irvin's fear that the State might attempt to confiscate the ranch due to Boyd's drug activity, Boyd and Lori executed a mortgage to Irvin in August 1991 in the amount of $37,850, representing the amount of equity in the property. The Broells' reasoning behind this transaction was to fully encumber the property to protect it from division by the dissolution court or forfeiture by the State. Irvin did not loan Boyd and Lori $37,850 in exchange for the mortgage. In fact, no consideration was ever exchanged between the parties for this transaction. It was the intent of the parties that the property be transferred back to Boyd following the resolution of his criminal proceedings.

¶10 Upon Boyd's default for failure to make an appearance, a final decree of dissolution was entered dissolving Boyd and Lori's marriage in November 1991. The decree required the ranch to continue to be held jointly by Boyd and Lori until sold, at which time the proceeds were to be divided equally between them. Fearing that the court would require the ranch to be sold, Boyd convinced Lori to accept $6500, the amount she contributed toward purchase of the ranch, and to transfer the property to Irvin so that it would appear to the court that the ranch had already been sold before any further action by the dissolution court.

¶11 In early 1992, Boyd and Lori deeded the ranch to Irvin by Warranty Deed. Irvin recorded this Warranty Deed in March 1992. Again, no money was ever exchanged between the parties for this transaction. The recording of this deed prompted the bank that

had financed Boyd's purchase of the ranch to require Irvin to assume the existing mortgage.

¶12 Irvin refinanced the mortgage with no additional consideration paid to Boyd and the bank granted Boyd and Lori a Satisfaction of Mortgage in April 1992. Thereafter, the mortgage payments on the ranch loan were made from the ranch earnings and/or were gifts from Irvin to Boyd.

¶13 Boyd was paroled from prison in May 1992. Following his parole, Boyd returned to the ranch and resumed its operation. While Irvin resided in East Helena, he continued to spend time at the ranch helping Boyd. In fact, when Boyd was jailed for 30 days due to a parole violation, Irvin assumed operation of the ranch during that time.

¶14 Due to Boyd's continuing criminal legal problems, Boyd and Irvin decided to wait to transfer the ranch back to Boyd until these problems were resolved. However, Irvin died unexpectedly in 1995 before Boyd was formally released from probation. Consequently, the ranch was still in Irvin's name at the time of his death.

¶15 As a result, Boyd brought this suit involving claims for resulting trust, cancellation of the mortgage and deed, declaration that the mortgage and deed were void, and to quiet title to the ranch. Following a nonjury trial, the District Court entered findings of fact and conclusions of law. The court concluded that the clear and convincing evidence established that a resulting trust should be imposed entitling Boyd to judgment quieting title to the ranch, subject to the bank mortgage and payments made by Mary Broell.

¶16 Mary Broell and Ellen Broell Arthun appeal from the Amended Judgment entered in favor of Boyd Broell. However, it is important to note that after the Notice of Appeal had been filed, Mary filed a Satisfaction of Judgment acknowledging receipt of the payments she had made in the amount of $8546.10. In addition, First National Park Bank, now known as First Interstate Bank, filed a Satisfaction of Judgment acknowledging receipt of $19,318.43 constituting full and final payment of the principal, interest, and penalties due and owing pursuant to the mortgage and note.

## DISCUSSION

¶17 Whether the District Court erred by imposing a purchase money resulting trust in favor of Boyd Broell?

¶18 "The standard of review governing proceedings in equity is codified at § 3-2-204(5), MCA, which directs the appellate court to review and determine questions of fact as well as questions of law." *Gitto v. Gitto* (1989), 239 Mont. 47, 50, 778 P.2d 906, 908. Trusts must be established by clear and convincing evidence that is practically free from doubt. *See Hilliard v. Hilliard* (1992), 255 Mont. 487, 492, 844 P.2d 54, 57 (citation omitted).

¶19 Mary and Ellen contend that the statutory criteria for a purchase money resulting trust do not exist in this case, requiring reversal of the District Court's decision. Specifically, Mary and Ellen allege that the prerequisite factual situation involving a transfer of property made to one person and the purchase price paid by another does not exist in this case. They argue that the facts presented cannot establish a resulting trust as a matter of law.

¶20 Boyd asserts that the District Court correctly concluded that the ranch was subject to a resulting trust from Irvin, as trustee, to Boyd, as beneficiary. In addition, Boyd contends that clear and convincing evidence establishes Irvin Broell's intent to hold the title to the ranch for the benefit of his son, Boyd, until such time that he could deed it back to his son upon the resolution of Boyd's criminal proceedings.

¶21 In its findings of fact and conclusions of law, the District Court determined that Irvin did not expect payment for his work on the ranch or other contributions to the ranch, but that his labor and contributions were gifts designed to help Boyd keep the ranch and eventually pass it on to Irvin's grandchildren. Further, the District Court concluded that the testimony presented established by clear and convincing evidence that a resulting trust should be imposed and that Boyd was entitled to judgment quieting title to the ranch, subject only to the existing bank mortgage and payments made by Mary Broell.

¶22 Resulting trusts and constructive trusts arise by operation of law. See § 72-33-220, MCA (1991). Section 72-33-218, MCA, with regard to purchase money resulting trusts provides:

> (1) Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person who paid the purchase price.

> ¶23 Boyd's grandmother's estate and personally made the mortgage payments until mid-1991. In addition, the testimony at trial as well as the affidavits submitted in

support of Boyd's motion for summary judgment establish that Boyd did not intend to gift the ranch to his father by the transfer. To the contrary, the evidence demonstrates that the transfer was performed to protect the ranch from division in the dissolution action and from possible forfeiture by the State and was to be transferred back to Boyd once his legal problems were resolved.

¶24 Moreover, there is clear and convincing evidence that indicates while Boyd was incarcerated Irvin made the mortgage payments primarily from the income generated by the ranch and that any personal contributions made by Irvin to keep the ranch operating were intended as gifts to Boyd to ensure that the ranch would remain in the Broell name to be passed on to his grandchildren. Accordingly, we conclude that the District Court did not err by imposing a purchase money resulting trust in favor of Boyd Broell.

¶25 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER