No. 01-055

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 182

EUGENE GEORGE KANE, d/b/a KANE

WELL DRILLING & PUMP SERVICE,

Plaintiff and Appellant,

v.

JAMES M. MORGAN and

MARIAN H. MORGAN,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Mineral,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Anthony L. Silvestri, Tipp & Buley, Missoula, Montana

For Respondents:

John H. Gilliam, Skjelset, Gilliam & Geer, P.L.L.P., Missoula, Montana

Submitted on Briefs: June 14, 2001
Decided: September 6, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Eugene Kane appeals from the Findings of Fact, Conclusions of Law, Order and Judgment issued by the Fourth Judicial District Court, Mineral County, granting judgment in his favor in the amount of $4,560 plus interest. Kane contends that the District Court's finding that he did not intend to charge the defendants for one of two wells that he drilled for them is clearly erroneous. We reverse and remand for proceedings consistent with this opinion.

BACKGROUND

¶2 The following facts are taken from the District Court's findings and have not been contested by either party on appeal: Eugene George Kane is an experienced and licensed well driller who resides in Superior, Montana, and is engaged in the water well drilling and pump supply business. Kane and his family run Kane Well Drilling & Pump Service. In 1998 Kane contracted with James M. Morgan to drill a well on property Morgan co-owned with his mother, Marian H. Morgan, in Mineral County, Montana. During October and November 1998, Kane drilled two wells for Morgan. Morgan showed Kane a spot he had picked for the first well. Kane informed Morgan prior to drilling that he had previously drilled a test well nearby which had produced no water. Despite this information, Morgan decided to go ahead with drilling. Kane drilled a hole 400 feet deep, but found very little water. The hole was cased to 140 feet with steel casing and lined with slotted plastic casing to 150 feet. Kane only charged Morgan for the first 150 feet of this well.

¶3 Approximately one week later, Morgan asked Kane to drill another well near the previous hole. Kane again informed Morgan that there might be little or no water, but Morgan insisted the drilling be done at that location. Kane drilled and cased the second hole to 240 feet. This hole produced very little water. Prior to drilling either well, Kane and Morgan agreed on a price of $19 per foot. Kane submitted a bill to Morgan for 150

feet of the first hole and the entire 240 feet of the second hole, for a total amount of $7,410. Although Morgan never paid the bill and kept putting Kane off when Kane inquired about payment, Morgan never objected to either the amount of drilling or the bill.

¶4 On October 13, 1999, Kane filed a complaint against Morgan, seeking the contract amount plus interest. The District Court held a non-jury trial and subsequently issued Findings of Fact, Conclusions of Law, Order and Judgment awarding Kane $4,560 plus interest. The court did not grant Kane the entire contract amount because it found that Kane had relinquished his claim for payments with regard to the first well during his direct examination by his attorney. Kane appeals from this finding and the resulting judgment.

## STANDARD OF REVIEW

¶5 Findings of fact shall not be set aside unless clearly erroneous. We employ a three-part test when determining whether a district court's findings are clearly erroneous: 1) whether the findings are supported by substantial evidence in the record; 2) whether the trial court has misapprehended the effect of the evidence; and 3) if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that the trial court's findings are clearly erroneous when, although there is evidence to support it, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *In re Marriage of Kotecki*, 2000 MT 254, ¶ 8, 301 Mont. 410, ¶ 8, 10 P.3d 828, ¶ 8 (citations omitted).

## DISCUSSION

¶6 Did the District Court err when it found that Kane did not intend to charge Morgan for the first well he drilled?

¶7 The District Court found that at trial Kane testified he would not charge Morgan for the entire first well. This finding was entirely based on the following colloquy which occurred during Kane's direct examination by his counsel:

> Q [Counsel for Kane]. Did you discuss with [Morgan] at that time that he still owed $19 a foot?
>
> A [Kane]. He knew that before we ever moved to [the second well].
>
> Q. Okay. So you started to drill.

A. I didn't charge him for the whole 400 feet. I charged him for the first hole. I charged him for the 150 feet that I drilled.

Q. Okay.

A. I give him the rest of the hole.

Q. You just gave it to him?

A. Yeah, I give it to him. I think I'd give it all to him.

¶8 Kane insists that the District Court misinterpreted his statements and that he did not intend to give Morgan the entire first well free of charge. Kane maintains that he intended to charge Morgan for the first 150 feet and only gave him the last 250 feet free of charge. With regard to his statement "I think I'd give it all to him", Kane contends that it was a light-hearted sarcastic remark. Kane notes that other witnesses, such as his son Gary Kane, testified that Morgan would be charged for the first 150 feet of the first well. Kane also observes that Morgan testified that he was charged for the first 150 feet and that Morgan never contested the amount of the bill until the commencement of this action. Lastly, Kane notes that his remark was not handled as a declaration that he was gifting Morgan the entire first well by either of the parties and was not followed up on direct or cross-examination.

¶9 Morgan argues that the District Court correctly determined that Kane gave him the entire first well free of charge. Morgan contends that Kane's own testimony supports this finding. Morgan also contends that his own testimony that he and Kane agreed that he would not be charged for the first well supports the District Court's finding. He asserts that there is no record evidence to support the conclusion that the District Court misapprehended the intent of Kane's remark. Citing *In re Marriage of Brown* (1997), 283 Mont. 269, 274, 940 P.2d 122, 125, and *In re Estate of Silver*, 2000 MT 127, ¶ 41, 299 Mont. 506, ¶ 41, 1 P.3d 358, ¶ 41, Morgan observes that it is the province of the trier of fact to judge a witness's appearance, demeanor, candor, and credibility. Thus, he asserts that whether Kane was serious or sarcastic when he said "I think I'd give it all to him" is a determination left to the District Court and should not be disturbed on appeal.

¶10 Standing alone, Kane's testimony that "I think I'd give it all to him" could support the

District Court's finding that Kane intended to give Morgan the entire first well. Coming as it does directly after Kane's acknowledgment that he gave Morgan the remaining 250 feet of the first well free of charge, however, the "all" that Kane was referring to could also easily be interpreted as referring to only that last 250 feet of the first well. Alternatively, Kane's statement could have been a light-hearted sarcastic remark as he insists.

¶11 Typically, we would defer to the trier of fact's interpretation of equivocal testimony. However, in the instant case there is absolutely no other evidence to support the District Court's interpretation of Kane's testimony as a gift of the entire first well. At the same time, the record contains substantial evidence indicating that the District Court misinterpreted Kane's statement. Significantly, shortly after Kane made the statement in question, counsel for Morgan cross-examined Kane as if the alleged gift of the first well had never occurred, and Kane continued to maintain that he was charging Morgan for the first 150 feet of that well:

> Q [Counsel for Morgan]. Okay. So -- And you feel that he owes you how much money for that first well?
>
> A [Kane]. For the first one? I don't know. I figured up the whole job come out to 7,000-some dollars.
>
> Q. Okay.
>
> A. Anything past 150 feet on the 400-foot hole, I give him that.
>
> Q. Okay.

¶12 Also, after Kane's alleged gift, counsel for both parties continued to examine other witnesses as if the question of whether Morgan was liable for the first 150 feet was still at issue. For instance, counsel for Morgan questioned Kane's son Gary extensively about the charges for the first well:

> Q [Counsel for Morgan]. Okay. Did you tell them at that particular time what they owed on the first well?
>
> A [Gary Kane]. They knew what --
>
> Q. That's not the question, sir. Did you tell them at that time what they owed on the

first well?

A. I didn't tell them right out word for word as to how much they owed, but they knew it was so many feet at so many dollars.

Q. Okay. And you understood that it was $19 a foot for any amount that was drilled or any amount that was cased?

A. We billed it for any amount that was cased.

We fail to understand why Morgan's counsel would continue to question witnesses about how much was charged for the first well after Kane had already allegedly relinquished his claim to any charges associated with it by giving it entirely to Morgan.

¶13 A review of the record in the instant case leaves this Court with a definite and firm conviction that the District Court committed a mistake. *See Marriage of Kotecki*, ¶ 8. Significantly, it appears that neither party interpreted Kane's remark as a gift of the entire first well: It was not followed up by either party during direct or cross-examination of Kane. On cross-examination, counsel for Morgan questioned Kane as if the gift had never occurred and Kane continued to maintain that Morgan was liable for the first 150 feet. Counsel for Morgan questioned subsequent witnesses as if Kane had not relinquished his claim to damages for the first well. Remarkably, Morgan did *not* maintain in his proposed findings of fact and conclusions of law that Kane had relinquished his claim to contract damages with regard to the first well.

¶14 We can only conclude from the foregoing that the District Court misinterpreted Kane's testimony. Accordingly, we reverse the District Court's finding that Kane would not charge Morgan for the entire first well and remand for proceedings consistent with this opinion.

¶15 Reversed and remanded.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JIM RICE