No. DA 06-0392

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 116

_____

J. JAY BILLMAYER, d/b/a BILLMAYER ENGINEERING,

        Plaintiff and Appellant,

   v.

CITY OF KALISPELL,

        Defendant and Respondent,

   and

SCHWARZ ARCHITECTURE & ENGINEERING, INC.,

        Intervenor and Respondent.

_____

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DV 05-939,
The Honorable Stewart E. Stadler, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

                John F. Lacey, McGarvey, Heberling, Sullivan & McGarvey, Kalispell, Montana

        For Respondent:

                Eric F. Kaplan, Kaplan Law Firm, Columbia Falls, Montana

_____

Submitted on Briefs:  April 4, 2007
Decided:  May 15, 2007

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    J. Jay Billmayer, d/b/a Billmayer Engineering (Billmayer), appeals from an order of the Eleventh Judicial District Court, Flathead County, denying his request for injunctive relief.

¶2    We review whether the District Court manifestly abused its discretion in denying Billmayer's request for injunctive relief.

### FACTUAL AND PROCEDURAL HISTORY

¶3    Billmayer contracted with Springcreek Development (Springcreek) in 1999 to perform a floodplain study on a parcel of land south of Highway 2 near Kalispell. Springcreek had asked Billmayer to perform the study in response to the City of Kalispell's decision to bring an enforcement action against Springcreek for attempting to develop land in a floodplain. Springcreek filed Billmayer's floodplain study documents as part of its permit request with the City of Kalispell (the City), Flathead County, and the Federal Emergency Management Agency.

¶4    The owners of a parcel of land near Springcreek's land contracted with Schwarz Architecture & Engineering Inc. (Schwarz) sometime after Springcreek had filed the floodplain study documents with the various government entities. Schwarz requested permission from the City to review and make photocopies of Billmayer's Springcreek floodplain study. The City permitted Schwarz to review Billmayer's study, but declined to provide photocopies to Schwarz absent permission from Billmayer in light of the fact that he had "labeled [the documents] as having a proprietary interest." Billmayer refused to grant Schwarz permission to photocopy the documents. The City then informed

2

Billmayer that it would provide photocopies of the floodplain study documents to Schwarz unless he took "formal action to bar" Schwarz's request for photocopies.

¶5 Billmayer filed an "Application for Injunction" in the District Court on December 15, 2005, seeking to enjoin the City from providing Schwarz with photocopies of the floodplain study documents. Billmayer recognizes in his application for injunction that citizens are entitled to inspect and copy documents filed with the City pursuant to § 2-6-102, MCA. He argues, however, that his documents fall into an exception for documents that are "constitutionally protected from disclosure . . . ." He emphasizes that he seeks only to enjoin the City from giving a photocopy of the floodplain study documents to Schwarz, but does not seek to enjoin Schwarz's right to inspect the documents.

¶6 The court temporarily restrained the City from providing any photocopies of the floodplain study documents until it could conduct a "show-cause" hearing. The court granted Schwarz's motion to intervene. The court held the show cause hearing on January 24, 2006.

¶7 Billmayer testified at the hearing that he had "no objection to the public viewing" the floodplain study. He objected only to "the copying" of his documents. Billmayer also submitted a map, marked "Exhibit 1," at the proceedings as a representation of the floodplain study documents that Springcreek had filed with the various government entities. He drew the court's attention to the following "proprietary language" at the bottom of the map: "This document is the property of Billmayer Engineering, Kalispell, Montana. Unauthorized use, reproduction or duplication is strictly prohibited."

¶8     Schwarz responded that it was entitled to inspect and copy the documents pursuant to § 2-6-102, MCA, regardless of Billmayer's "proprietary language." The City stated briefly that it sought guidance from the court "in regard to how we handle" Billmayer's documents. The court directed the parties at the conclusion of the hearing to submit briefs after which the court would "deem [the matter] submitted."

¶9     Billmayer submitted a "notice of copyright protection" along with his brief. The "notice" states in part "that the document admitted as Exhibit 1 at the January 24, 2006, hearing in this case and contained within this court file has official copyright protection pursuant to federal law and the U.S. Copyright Office."

¶10    The court denied Billmayer's application for injunction on April 10, 2006. The court noted that "[t]his [District] Court certainly cannot speculate or find that [Schwarz's] contemplated use of the data contained in the documents would constitute a taking requiring compensation, possibly violate copyright law or in any way violate [Billmayer's] constitutional property rights." Billmayer appeals.

## STANDARD OF REVIEW

¶11    We review a district court's denial of an injunction to determine whether the district court manifestly abused its discretion. *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. We review a district court's findings of fact to determine whether they are clearly erroneous. *Kane v. Morgan*, 2001 MT 182, ¶ 5, 306 Mont. 207, ¶ 5, 32 P.3d 747, ¶ 5.

4

**DISCUSSION**

¶12     *Whether the District Court manifestly abused its discretion in denying Billmayer's request for injunctive relief?*

¶13     Section 2-6-102, MCA, grants "citizens" the "right to inspect and copy public writings." The parties agree that the floodplain documents are subject to the disclosure rules of § 2-6-102, MCA, in light of the fact that the documents qualify as "public writings" pursuant to § 2-6-101(2), MCA. Section 2-6-102, MCA, provides, in relevant part, that "[e]very citizen has a right to inspect and take a copy of any public writings of this state, except as provided in . . . subsection (3) of this section . . . ." Billmayer contends that his proprietary interest in the floodplain study documents triggers the exception to public disclosure in Subsection (3).

¶14     Subsection (3) states that "[r]ecords and materials that are constitutionally protected from disclosure are not subject to the provisions of this section." Section 2-6-102(3), MCA. Subsection (3) defines "[i]nformation that is constitutionally protected" as "information in which there is an individual privacy interest that clearly exceeds the merits of public disclosure, including legitimate trade secrets, as defined in 30-14-402, and matters related to individual or public safety." Section 2-6-102(3), MCA. Billmayer argues, specifically, that the District Court erred in finding that his documents were not "trade secrets."

¶15     Section 30-14-402, MCA, defines a trade secret as "information or computer software, including a formula, pattern, compilation, program, device, method, technique, or process, that . . . derives independent economic value, actual or potential, from not

5

being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Section 30-14-402(4)(a), MCA. The statute also requires that the "trade secret" be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Section 30-14-402(4)(b), MCA.

¶16    Billmayer admits that he has "no objection to the public viewing" his records. His efforts have been directed, in fact, solely at restricting the photocopying of his floodplain study, not at maintaining its confidentiality. Thus, Billmayer has failed to prove that his documents are "not . . . readily ascertainable" by anyone who wishes to view them, and he has made no "reasonable efforts" to maintain his documents' secrecy. Section 30-14-402(4), MCA. The District Court was not clearly erroneous in finding that "the data and information contained in the documents has been disclosed, [and] is not confidential . . . ." *Kane*, ¶ 5.

¶17    Billmayer relies on *Taco Cabana Intern., Inc. v. Two Pesos*, Inc., 932 F.2d 1113, 1124 (5th Cir. 1991), for the proposition that filing documents with a public agency does not defeat a trade secret. The court in *Taco Cabana* held that the district court correctly had instructed the jury that the "'[f]iling of architectural plans with a city does not make them public information within the context of secrecy that relates to the law of trade secrets.'" *Taco Cabana*, 932 F.2d at 1124. Billmayer misplaces his reliance on *Taco Cabana*. The District Court found that Billmayer had failed to protect his trade secret in light of the fact that he admitted that the public has been free to examine the documents for years, not because he filed his documents with the government.

¶18   Billmayer alleges in the alternative that he has a right to restrict the copying of the flood plan study documents pursuant to a federal copyright. Billmayer first raised the issue of federal copyright protection late in the District Court proceedings when he filed a "Notice of Copyright Protection" along with his "Post-Hearing Brief." He stated in an attached affidavit that he had "initiated formal legal steps to register and secure federal copyright protection of all those maps and other documents that I prepared for [Springcreek]." He asserted in his "Post-Hearing Brief" that "[m]atters of federal copyright law are beyond the scope of this Court's jurisdiction and this Court's request for [post-hearing] briefing." Billmayer stated, however, that he "is prepared, if requested by the Court, to substantiate with additional legal briefing the legitimacy of his right to pursue and attach federal copyright protection for these documents at this time . . . ." The record shows no "additional legal briefing" on the issue of a Billmayer's alleged "federal copyright." Accordingly, the District Court refused to "speculate or find that [Schwarz's] contemplated use of the data contained in the documents would . . . possibly violate copyright law . . . ."

¶19   Billmayer attempts to resuscitate his federal copyright arguments on appeal with oblique references to federal copyright concepts such as "fair-use" and citations to case law on the "common law copyright." The passage of the 1976 Copyright Act preempted the legal concept of common law copyright. *See e.g.*, *Roth v. Pritikin*, 710 F.2d 934, 938-39 (2nd Cir. 1983). We need not unravel Billmayer's federal copyright arguments on appeal as he has failed to present adequately this issue to the District Court. *Allen v. Atlantic Richfield Co.*, 2005 MT 281, ¶ 20, 329 Mont. 230, ¶ 20, 124 P.3d 132, ¶ 20.

¶20 Billmayer argues lastly that the District Court failed to engage in the constitutional balancing analysis required by § 2-6-102(3), MCA. He has failed to identify a "legitimate trade secret," or any other recognized "individual privacy interest," however, that the court could have balanced against the "merits of public disclosure" as required by § 2-6-102(3), MCA. He also has failed to establish a basis upon which the court could have determined that the photocopying of his documents would deprive him of his property without due process. *Cf. Great Falls Trib. v. Mont. Public Ser. Com.*, 2003 MT 359, ¶ 59, 319 Mont. 38, ¶ 59, 82 P.3d 876, ¶ 59 (holding that a court must consider whether disclosure of documents pursuant to Montana Constitution Article II, Section 9 would constitute a "'taking' in the constitutional sense."). The District Court did not abuse its discretion in denying Billmayer's application for injunction under these circumstances. *Shammel*, ¶ 12.

¶21 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART